A. Statutory Construction
In construing statutes, our primary objective is to give effect to the Legislature's intent. Tex. Lottery Comm'n v. First State Bank of DeQueen , 325 S.W.3d 628, 635 (Tex. 2010) (citing Galbraith Eng'g Consultants, Inc. v. Pochucha , 290 S.W.3d 863, 867 (Tex. 2009) ). We rely on the plain meaning of the text as expressing legislative intent unless a different meaning is supplied by legislative definition or is apparent from the context, or the plain meaning leads to absurd results. Id. (citing City of Rockwall v. Hughes , 246 S.W.3d 621, 625-26 (Tex. 2008) ). A statute is ambiguous if its words are susceptible to two or more reasonable interpretations and we cannot discern legislative intent from the language alone. Tex. State Bd. of Exam'rs of Marriage & Family Therapists v. Tex. Med. Ass'n. , 511 S.W.3d 28, 41 (Tex. 2017). When a statute is not ambiguous on its face, it is inappropriate to use extrinsic aids to construe the unambiguous statutory language. City of Rockwall , 246 S.W.3d at 626. But see TEX. GOV'T CODE § 311.023 (permitting courts to consider legislative history and other construction aids regardless of ambiguity).
We read statutes contextually to give effect to every word, clause, and sentence, Melden & Hunt, Inc. v. E. Rio Hondo Water Supply Corp. , 520 S.W.3d 887, 893 (Tex. 2017), because every word or phrase is presumed to have been intentionally used with a meaning and a purpose. ExxonMobil Pipeline Co. v. Coleman , 512 S.W.3d 895, 899 (Tex. 2017) ; Morton v. Nguyen , 412 S.W.3d 506, 516 (Tex. 2013). Words not statutorily defined bear their common, ordinary meaning unless a more precise definition is apparent from the statutory context or the plain meaning yields an absurd result. Paxton v. City of Dall. , 509 S.W.3d 247, 256 (Tex. 2017). To determine a term's common, ordinary meaning, we typically look first to dictionary definitions. Tex. State Bd. of Exam'rs of Marriage & Family Therapists , 511 S.W.3d at 35. We analyze the statutes at issue in this case no differently, paying close attention to each word the Legislature has chosen.
The plain language of Civil Practice and Remedies Code section 101.023 and Transportation Code section 452.056, each standing in isolation, is fairly easily understood. What is unclear in this case is the meaning of the two statutes read together. When interpreting each provision, we must consider the statutory scheme as a whole. 20801, Inc. v. Parker , 249 S.W.3d 392, 396 (Tex. 2008) ("[W]hen interpreting [a specific statute], we must consider its role in the broader statutory scheme."); Helena Chem. Co. v. Wilkins , 47 S.W.3d 486, 493 (Tex. 2001). Looking to the statutory scheme, we strive to give the provision a meaning that is in harmony with other related statutes. See City of Dall. v. Abbott , 304 S.W.3d 380, 384 (Tex. 2010) ; see also La Sara Grain Co. v. First Nat. Bank of Mercedes , 673 S.W.2d 558, 565 (Tex. 1984) ("Generally, courts are to construe statutes so as to harmonize *839 [them] with other relevant laws, if possible.") (citing State v. Standard Oil Co. , 130 Tex. 313, 107 S.W.2d 550 (1937) ). "Put differently, our objective is not to take definitions and mechanically tack them together ... [;] rather, we consider the context and framework of the entire statute and meld its words into a cohesive reflection of legislative intent." Cadena Comercial USA Corp. v. Tex. Alcoholic Beverage Comm'n , 518 S.W.3d 318, 326 (Tex. 2017). Therefore, our analysis seeks to harmonize the two statutes at issue in this case, giving effect to both within the context of the TTCA and reflecting legislative intent.
B. Immunity
"Sovereign immunity protects the State from lawsuits for money damages." Reata Constr. Corp. , 197 S.W.3d at 374 (quoting Tex. Nat. Res. Conservation Comm'n v. IT-Davy , 74 S.W.3d 849, 853 (Tex. 2002) (plurality op.) ). Under our tradition, the judiciary has defined the boundaries of the common law doctrine of sovereign immunity and determined under what circumstances immunity exists, and we have deferred to the Legislature to waive immunity. Id. at 374-75. We have recognized that political subdivisions, including governmental units such as FWTA, are entitled to such immunity-referred to as governmental immunity-unless it has been waived. Id. at 374. The TTCA provides a limited waiver of governmental immunity for certain suits against governmental entities, and it caps recoverable damages. See TEX. CIV. PRAC. & REM. CODE §§ 101.021 -.026; Mission Consol. Indep. School Dist. v. Garcia , 253 S.W.3d 653, 655 (Tex. 2008). Specifically, the TTCA waives governmental immunity to the extent that liability arises from "the operation or use of a motor-driven vehicle or motor-driven equipment." TEX. CIV. PRAC. & REM. CODE § 101.021(1)(A) ; Garcia , 253 S.W.3d at 655-56. A key provision of the TTCA is the damages-cap provision: "[L]iability of a unit of local government under this chapter is limited to money damages in a maximum amount of $100,000 for each person ...." TEX. CIV. PRAC. & REM. CODE § 101.023(b).
Policy justifications for immunity-and by extension, for limitations on waivers of immunity-revolve around protecting the public treasury. Brown & Gay Eng'g, Inc. v. Olivares , 461 S.W.3d 117, 121 (Tex. 2015). "At its core, the doctrine 'protects the State [and its political subdivisions] from lawsuits for money damages' and other forms of relief, and leaves to the Legislature the determination of when to allow tax resources to be shifted 'away from their intended purposes toward defending lawsuits and paying judgments.' " Id. (quoting IT-Davy , 74 S.W.3d at 853-54 ). Immunity thus protects the public as a whole. Id. This protection, however, comes at cost-in protecting the public by shielding government funds from the costs of litigation, immunity "places the burden of shouldering those costs and consequences on injured individuals." Id. (internal quotations marks omitted).
This Court has historically taken a function-based approach to governmental immunity-when the parameters of whether an entity is a "governmental unit" are unclear, we distinguish between an entity performing a governmental function and one performing a proprietary function, affording immunity to the former but not the latter. E.g. , Wheelabrator Air Pollution Control, Inc. v. City of San Antonio , 489 S.W.3d 448, 451-52 (Tex. 2016) (declining to extend governmental immunity to a municipally owned electric and gas utility because the operation and maintenance of a public utility is classified as a proprietary function); Rusher v. City of Dall. , 83 Tex. 151, 18 S.W. 333, 334 (1892) (extending governmental immunity to a police officer *840 because the officer acted as an agent of the State in performing a governmental function on behalf of the State); City of Galveston v. Posnainsky , 62 Tex. 118, 125-26 (1884) (explaining that governmental immunity extends to a town when the town is performing duties "exclusively for public purposes"). The TTCA codified this proprietary-governmental distinction. See Turvey v. City of Houston , 602 S.W.2d 517, 519 (Tex. 1980) (noting that the TTCA expressly waived governmental immunity to the extent expressed in the statute but "preserved the claimant's common law remedy to seek unlimited damages for the negligent acts of a municipality while engaged in a proprietary function").
Furthermore, while granting immunity has traditionally been the province of the judiciary, the Legislature has the power to change the common law classifications of certain functions as proprietary or governmental, even when doing so has the effect of extending immunity from suits that could have been maintained at common law. City of Tyler v. Likes , 962 S.W.2d 489, 503 (Tex. 1997). This authority stems from the Texas Constitution itself: "Notwithstanding any other provision of this constitution, the [L]egislature may by law define for all purposes those functions of a municipality that are to be considered governmental and those that are proprietary, including reclassifying a function's classification assigned under prior statute or common law." TEX. CONST. art. XI, § 13. Thus, "[i]n determining the boundaries of immunity as it relates to whether a function is proprietary or governmental, ... courts should be guided ... by the TTCA's treatment of the proprietary-governmental distinction." Wasson Interests, Ltd. v. City of Jacksonville , 489 S.W.3d 427, 439 (Tex. 2016) ; see also TEX. TRANSP. CODE § 452.052(c) ("An authority is a governmental unit under Chapter 101, Civil Practice and Remedies Code, and the operations of the authority are not proprietary functions for any purpose including the application of Chapter 101, Civil Practice and Remedies Code.").
C. Section 101.023
In Texas, governmental immunity has two components: immunity from liability, which bars enforcement of a judgment against a governmental entity, and immunity from suit, which bars suit against the entity altogether. Tooke v. City of Mexia , 197 S.W.3d 325, 332 (Tex. 2006). The TTCA waives both components of governmental immunity. TEX. CIV. PRAC. & REM CODE §§ 101.021 (waiving immunity from liability), 101.025 (waiving immunity from suit). Section 101.023 limits only the liability of a governmental unit-it does not shield it from suit. Id. § 101.023. However, consistent with the principles that support immunity, this Court has held that the Legislature intended section 101.023 to limit the government's exposure to liability under the TTCA, even when that reduces a potential plaintiff's recovery. See City of Austin v. Cooksey , 570 S.W.2d 386, 387-88 (Tex. 1978). In Cooksey , we held that the $100,000 cap "per person"[1] referred to the person injured, not to the number of plaintiffs who suffer a loss as a result of injury to someone else. Id. We reasoned, "When one person is injured or killed and one plaintiff brings suit, the applicable limit of liability is $100,000. That limit should not change simply because the deceased is survived *841 by two or more statutory beneficiaries under the wrongful death statute." Id. (internal citation omitted). Thus, we have previously resolved uncertainty about the consequences of section 101.023 in favor of limiting liability under the damages cap.
Of course, these principles alone do not resolve the issue at hand. Rodriguez argues that applying the $100,000 damages cap to separate defendants individually does not expand the liability of a regional transportation authority, because the authority's liability remains capped at $100,000 regardless of the number of defendants sued. We turn next to Transportation Code section 452.056 to analyze the two statutes in conjunction with one another.
D. Section 452.056(d)
The 1987 amendments to the TTCA reclassified public transportation systems, which were previously proprietary functions, as governmental functions, thereby placing them within the bounds of governmental immunity, but also subjecting them to the limited waiver of immunity in TTCA section 101.021(1)(A) and the damages cap in section 101.023. See TEX. TRANSP. CODE § 452.052 ("[T]he operations of the authority are not proprietary functions for any purpose, including the application of Chapter 101, Civil Practice and Remedies Code."); Salvatierra v. Via Metro. Transit Auth. , 974 S.W.2d 179, 182-83 (Tex. App.-San Antonio 1998, pet. denied) (explaining that a transit authority is not proprietary for any purpose and exposure to tort liability is limited to the TTCA). Functions performed under chapter 452 are now designated "essential governmental functions" that are "a matter of public necessity." TEX. TRANSP. CODE § 452.052(a), (b). Thus, there is no question that an authority acting under chapter 452 is entitled to the damages cap of section 101.023. Id. ; TEX. CIV. PRAC. & REM. CODE § 101.023.
The Transportation Code explicitly allows a transportation authority to contract with private operators for functions involved in operation of its public transportation system. TEX. TRANSP. CODE § 452.056(a)(3). It also addresses the liability consequences for the private operator:
A private operator who contracts with an authority under this chapter is not a public entity for purposes of any law of this state except that an independent contractor of the authority that ... performs a function of the authority ... is liable for damages only to the extent that the authority or entity would be liable if the authority or entity itself were performing the function.
Id. § 452.056(d). This, of course, necessarily refers back to the damages-cap provision, which limits "the extent that the authority or entity would be liable" to $100,000. See id. ; TEX. CIV. PRAC. & REM. CODE § 101.023(b). The parties disagree about whether section 452.056(d) puts an independent contractor in the shoes of the transportation authority such that the $100,000 cap applies cumulatively to all entities performing functions involved in operating a public transportation system, or makes each entity separately liable for up to $100,000.
As a preliminary matter, we note that the Legislature has not purported to grant immunity or extend it to independent contractors under chapter 452. Indeed, neither "governmental status" nor "immunity" appears in the statute. See TEX. TRANSP. CODE § 452.056(d) ; cf. TGS-NOPEC Geophysical Co. v. Combs , 340 S.W.3d 432, 439 (Tex. 2011) (presuming that the Legislature "chooses a statute's language with care, including each word chosen for a purpose, while purposefully omitting words not chosen"). Instead, the Legislature has *842 cabined the impact of the statute to the liability of independent contractors performing governmental functions under chapter 452. TEX. TRANSP. CODE § 452.056(d) (" ... an independent contractor of the authority that ... performs a function of the authority ... is liable for damages only to the extent that the authority or entity would be liable ...."); see also Liability , BLACK'S LAW DICTIONARY (10th ed. 2014) ("The quality, state, or condition of being legally obligated or accountable; legal responsibility to another or to society, enforceable by civil remedy or criminal punishment.").
With respect to liability, the Legislature has created a limited exception to the general rule that an independent contractor is not a public entity for any purpose. See TEX. TRANSP. CODE § 452.056(d) ("A private operator who contracts with an authority under this chapter is not a public entity for purposes of any law of this state except ....") (emphasis added); Except , THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (5th ed. 2016) ("with the exclusion of; other than; but," or "to leave out; exclude"). Based on the plain language of the statute, this exception is tied to the function performed by the contractor and limits the contractor's liability. See TEX. TRANSP. CODE § 452.056(d) (" ... except that an independent contractor of the authority that ... performs a function of the authority ... is liable for damages ....") (emphasis added). Thus, the Legislature has instructed that, for the purpose of liability, an independent contractor performing the function of an authority under this chapter should be treated as if it were the governmental unit performing that function.
Our construction is consistent with our recent decision in Brown & Gay Engineering , in which we declined to extend immunity to independent contractors under other provisions of the Transportation Code. See 461 S.W.3d at 121-29. In that case, we rejected the plaintiff's argument that an explicit extension of immunity to contractors in some instances evidences legislative intent to deprive contractors of immunity where such an extension was not present. Id. at 122 (citing TEX. TRANSP. CODE § 452.056 ). We reasoned that the "absence of a statutory grant of immunity is irrelevant to whether, as a matter of common law, the boundaries of sovereign immunity encompass private government contractors exercising their independent discretion in performing government functions." Id. at 122-23 (emphasis added). However, we specifically declined in that case to address what the plaintiff argued was an "affirmative statutory extension[ ] of immunity to private contractors" under section 452.056. Id.
We address that question now, and we hold that section 452.056 does not amount to a legislative grant or extension of immunity to private contractors.[2] All the Legislature purported to do in section 452.056 is limit the liability of private contractors when they perform a function of an authority under chapter 452.[3]
*843 TEX. TRANSP. CODE § 452.056(d). This limit is buttressed by the Legislature's designation of chapter 452 functions as "essential governmental functions" that are "matter[s] of public necessity." Id. § 452.052. The parties do not dispute that MTA and MTI performed the functions of an authority under this section and thus are entitled the protection of section 452.056's limit on liability.
While the statute does use the singular "a private operator" performing "a function," this language designates who is entitled to the statute's protection. Id. § 452.056(d). The subsequent language then describes what protection those private contractors are afforded. The plain language of the statute defines the bounds of the limit on liability-an independent contractor that is subject to section 452.056(d) is liable for damages "only to the extent that the authority or entity would be liable if the authority or entity itself were performing the function." Id. Therefore, we consider the extent to which FWTA would be liable if it were performing the functions that MTA and MTI performed.
FWTA's liability is limited by section 101.023's damages cap to $100,000. TEX. CIV. PRAC. & REM. CODE § 101.023. Rodriguez takes the position that FWTA, MTA, and MTI each performed separate functions and are therefore each liable up to their own, separate $100,000 caps; however, this interpretation is inconsistent both with Rodriguez's pleadings and with the plain language of the statute. Under the contract, MTA agreed to employ a Director of Transportation Services, who was responsible for "the overall management and operation of all components of the FWTA's Operating Functions." MTI agreed to "employ all necessary and appropriate personnel" and to "procure all other goods and services reasonably necessary and useful to manage and operate the FWTA's public transportation system." Neither entity, acting alone, performed all of the services necessary to operate FWTA's bus transportation system. Rodriguez asserted that FWTA, MTA, and MTI collectively "owned, operated, managed, and/or controlled the bus transportation system operating in Fort Worth" and that they "were engaged in a joint enterprise or joint venture to operate and/or maintain such bus transportation system" and "comprised and constituted a single business enterprise in such regard," even going so far as to assert joint and several liability. Thus, we must consider how section 452.056(d)'s liability limits apply when independent contractors act jointly in operating a public transportation system. Here, if FWTA had itself performed each function involved in the operation of the bus transportation system, its liability would still be limited to a maximum of $100,000.[4] Thus, "the extent that [FWTA] would be liable if [FWTA] itself were performing the function" is $100,000, regardless of *844 whether FWTA performed a discrete part of the operation of its bus transportation system (e.g., employing the necessary personnel) or all functions necessary for such operation.
The inclusion of the word "only" reinforces our understanding of how the Legislature intended to limit the liability of independent contractors under Chapter 452 when they are performing functions of the government. See TEX. TRANSP. CODE § 452.056(d) ("[A]n independent contractor of the authority that ... performs a function of the authority ... is liable for damages only to the extent that the authority or entity would be liable if the authority or entity itself were performing the function."). "Only" is a term of limitation. Hallmark Mktg. Co. LLC v. Hegar , 488 S.W.3d 795, 799 (Tex. 2016). The dictionary definition of the word is "[a]nd nothing else or more; merely; just," or "[e]xclusively, solely." Only , THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (5th ed. 2016). And, to put it quite simply, " 'only' means 'only.' " U.S. v. Diaz-Gomez , 680 F.3d 477, 480 (5th Cir. 2012).
Although we always presume that the Legislature chooses each word intentionally, ExxonMobil Pipeline , 512 S.W.3d at 899, here we know that the Legislature deliberately included the word "only" in section 452.056(d). In 1987, when deciding between two nearly identical tort-reform bills providing limitations of liability independent contractors under chapter 452, the Legislature adopted the version that excluded the word "only," rejecting the bill that included it.[5] Act of June 1, 1987, 70th Leg., R.S., ch 538, 1987 Tex. Gen. Laws 2160 (current version at TEX. TRANSP. CODE § 452.056(d) ). The 1989 Legislature, having previously discarded the word "only," reinserted it into the current version of the statute.[6] See TEX. TRANSP. CODE § 452.056(d).
We interpret statutes according to the language the Legislature used, absent a context indicating a different meaning and unless the plain meaning yields absurd or nonsensiscal results. Molinet v. Kimbrell , 356 S.W.3d 407, 414-15 (Tex. 2011). Based on the plain language of section 452.056, we conclude that the statute does not extend immunity to private contractors, but instead limits the liability of private contractors performing an essential governmental function under chapter 452. MTA and MTI performed essential government functions, jointly providing the services necessary for the operation of *845 FWTA's bus transportation system, and they are therefore subject to the same liability limits as FWTA would have been had it performed those same functions. TEX. TRANSP. CODE § 452.056(d) ; see also Brown & Gay Eng'g , 461 S.W.3d at 129-31 (Hecht, C.J., concurring) (distinguishing between an independent contractor acting as the government and one acting for the government: "An independent contractor may act as the government, in effect becoming the government for limited purposes ....").
Rodriguez argues that while MTA and MTI are each entitled to limited liability, the statute allows a plaintiff to sue different entities for different causes of action arising from the same event and collect damages from each entity separately, up to their respective cap.[7] We disagree. This construction would effectively multiply the TTCA's statutory damages cap by the number of independent contractors performing a single governmental function, even when, as here, the independent contractors are alleged to have engaged in a joint enterprise with the authority that constitutes a single business enterprise. Such a result would be inconsistent with the statute's plain language, which limits liability to what the transportation authority would incur-a maximum of $100,000 for all functions involved in operating a public transportation system. Moreover, it cannot be that the Legislature's intent in enacting the TTCA-which operates through the relevant provisions to limit the government's liability and to encourage and facilitate a transportation authority's use of independent contractors-was to allow an authority's use of independent contractors to result in a significant increase in the amount of the TTCA's damages cap.
We hold that the liability of any number of independent contractors performing essential governmental functions for an authority under chapter 452 is limited to a single damages cap under the TTCA. Thus, FWTA, MTA, and MTI are cumulatively liable up to a single $100,000 damages cap.[8]
IV. Election of Remedies
Rodriguez seeks to collect $5 million in damages from the bus driver, Vaughn, arguing that as an employee of a private contractor, she is not protected by the TTCA's election-of-remedies provision. We disagree. As discussed above, we concluded that MTA and MTI can be liable "only to the extent that [FWTA] would be liable" if FWTA itself operated its own bus transportation system. See *846 TEX. TRANSP. CODE § 452.056(d). Therefore, we consider FWTA's potential liability with respect to an employee acting within the scope of her employment.
Under the TTCA, a governmental unit is liable for injuries caused by "the wrongful act or omission or the negligence of an employee acting within his scope of employment if: (A) the [injury] arises from the operation or use of a motor-driven vehicle ... ; and (B) the employee would be personally liable to the claimant according to Texas law." TEX. CIV. PRAC. & REM. CODE § 101.021(1). Thus, the very language of the statute suggests that an employee is not personally liable in this context. See id. (" ... and the employee would be personally liable to the claimant ....") (emphasis added). The election-of-remedies provision confirms an employee's exemption from personal liability under the TTCA: "The filing of a suit under this chapter against a governmental unit constitutes an irrevocable election by the plaintiff and immediately and forever bars any suit or recovery by the plaintiff against any individual employee of the governmental unit regarding the same subject matter." Id. § 101.106(a).
This provision was incorporated into the TTCA to prevent plaintiffs from circumventing the TTCA's damages cap by suing government employees, who were, at that time, not protected. Garcia , 253 S.W.3d at 656. It was expanded in 2003, as part of a comprehensive effort to reform the tort system, with the apparent purpose of forcing a plaintiff "to decide at the outset whether an employee acted independently and is thus solely liable, or acted within the general scope of his or her employment, such that the governmental unit is vicariously liable." Id. at 657.
Notably, Rodriguez has not alleged that Vaughn acted independently and is thus solely liable. Instead, she has asserted that Vaughn acted within the scope of her employment such that the Transit Defendants collectively are vicariously liable for her alleged negligence, if proven, under the doctrine of respondeat superior. Under our law, the doctrine of respondeat superior makes a principal liable for the conduct of its employee or agent. F.F.P. Operating Partners, L.P. v. Duenez , 237 S.W.3d 680, 686 (Tex. 2007) (citing Baptist Mem. Hosp. Sys. v. Sampson , 969 S.W.2d 945, 947 (Tex.1998) ); see also Respondeat Superior , BLACK'S LAW DICTIONARY (10th ed. 2014) ("The doctrine holding an employer or principal liable for the employee's or agent's wrongful acts committed within the scope of the employment or agency."). When a plaintiff alleges liability under respondeat superior, a governmental unit's liability is predicated on the liability of its employee. Bishop v. Tex. A&M Univ. , 35 S.W.3d 605, 607 (Tex. 2000). Thus, the governmental unit's liability is derivative, or indirect. DeWitt v. Harris Cty. , 904 S.W.2d 650, 654 (Tex. 1995) (citing Marange v. Marshall , 402 S.W.2d 236, 239 (Tex. Civ. App.-Corpus Christi. 1966) ). And whether a governmental unit's liability is direct or indirect, it is still "liability" for the purpose of the TTCA, and it is therefore limited both by the TTCA's damages cap and by the election-of-remedies provision.
Transportation Code section 452.056 creates a limited exception to the general rule that an independent contractor is not a public entity for any purpose-that is, for the purpose of liability, an independent contractor performing a function of an authority under chapter 452 should be treated as if it were the governmental unit performing that function. TEX. TRANSP. CODE § 452.056(d) ; Brown & Gay Eng'g , 461 S.W.3d at 129-31 (Hecht, C.J., concurring) ("An independent contractor may act as the government, in effect becoming the *847 government for limited purposes ...."). A governmental unit's direct liability is limited by the damages-cap provision, as we have discussed, and its indirect or vicarious liability under the doctrine of respondeat superior is limited by the election-of-remedies provision. See TEX. CIV. PRAC. & REM. CODE §§ 101.106, .023. Thus, notwithstanding the general rule that the TTCA's definition of "employee" expressly excludes the employee of an independent contractor, id. § 101.001(2), for the purpose of liability, an independent contractor performing an essential governmental function under Transportation Code chapter 452 shall be treated as the government. Therefore, the employees of such an independent contractor are to be treated as employees of the government for the purpose of liability. See TEX. TRANSP. CODE § 452.056(d). In her pleadings, Rodriguez alleged that MTA and MTI acted jointly as the government in performing an essential governmental function-the operation of Fort Worth's bus transportation system. MTA's and MTI's liability is thus limited under the TTCA to the extent that FWTA's liability would be if FWTA had performed the same function. See id. FWTA's vicarious liability for the conduct of its employee would be limited by the election-of-remedies provision. The same principles therefore extend to the vicarious liability of MTA and MTI with respect to Vaughn-an employee of an entity acting as the government, when she acted within the scope of her employment.
This is not the first time we have, for the purpose of the TTCA, treated an employee of a private entity as an employee of the government when that employee was performing a governmental function. See, e.g. , Klein v. Hernandez , 315 S.W.3d 1, 7-8 (Tex. 2010). In Klein , we held that a resident physician working at a public hospital under an agreement with his private medical school, Baylor College of Medicine, was to be treated as a state employee for the purpose of sovereign immunity when the underlying litigation arose from his work at the hospital. Id. In that case, we reasoned that the Legislature sought to encourage private medical schools to cooperate with public hospitals through clinical education programs for their residents. Id. at 7. Giving effect to this intent, we concluded that the Legislature intended to treat these private medical schools like other governmental entities at public hospitals, "extending the same protection and benefits to Baylor and its residents who work at these hospitals." Id. at 8. In short, "[h]ad Klein been directly employed by [the public hospital], he would be a governmental employee under the Tort Claims Act. ... Instead, Baylor provided Klein's services to [the public hospital]. This distinction, however, makes no difference ...." Id.
The same reasoning applies equally in this case. We have already explained that the Legislature intended to encourage and facilitate transportation authorities' contracting with independent contractors for the operation of all or part of their public transportation systems, and that the use of such independent contractors does not change the liability exposure for the performance of those services. See TEX. TRANSP. CODE § 452.056. We have also recognized that the purpose of the election-of-remedies provision was to prevent plaintiffs from circumventing the TTCA's damages cap by suing government employees. See Garcia , 253 S.W.3d at 656. It is clear from pleadings that Rodriguez did not sue Vaughn in her individual capacity and had no intention of collecting any judgment from Vaughn herself. Instead, Rodriguez pled that (1) MTA and MTI were vicariously liable for Vaughn's conduct under respondeat superior; and (2) FWTA, MTA, and MTI were vicariously and jointly liable *848 for the conduct of one another. She specifically requested declaratory relief that FWTA was obligated to pay the costs of any liability incurred by Vaughn. This is precisely the type of legal maneuvering that the election-of-remedies provision was enacted to prevent.
The extent of FWTA's liability is limited by the damages-cap provision and by the election-of-remedies provision. Under section 452.056, MTA and MTI are treated as the government for the purpose of liability, meaning that they are liable only to the extent that FWTA would be liable. Echoing Klein , if Vaughn had been employed directly by FWTA, she would be entitled to protection under the TTCA's election-of-remedies provision. That MTI provided Vaughn's services to FWTA makes no difference under section 452.056, which affords MTA and MTI the same liability limit as a governmental unit. See TEX. TRANSP. CODE § 452.056. Thus, we hold that an employee of an independent contractor performing an essential governmental function under Transportation Code chapter 452, who is acting within the scope of her employment, is afforded protection under the TTCA's election-of-remedies provision as if she were an employee of the government.[9]
Finally, we address Rodriguez's argument that Vaughn was not acting within the scope of her employment because she was driving negligently. The purpose of TTCA section 101.106 is to protect employees performing governmental functions within the scope of their employment. See Laverie v. Wetherbe , 517 S.W.3d 748, 752-53 (Tex. 2017) (holding that a defendant is entitled to dismissal under section 101.106 if "the plaintiff's suit is (1) based on conduct within the scope of the defendant's employment with a governmental unit and (2) could have been brought against the governmental unit under the [TTCA]"). We reject the notion that an employee's conduct cannot be within the course and scope of her employment if she is acting negligently. In fact, an entire body of law-respondeat superior-has developed around the premise that an employee can act within the course and scope of employment and still be negligent. See, e.g. , Ineos USA, LLC v. Elmgren , 505 S.W.3d 555, 565 (Tex. 2016) ("[W]hen an employee acts negligently within the course and scope of employment, respondeat superior permits a person injured by that action to sue the employee's employer directly to recover all damages caused by the employee's negligence.").
The scope-of-employment analysis, therefore, remains fundamentally objective: Is there a connection between the employee's job duties and the alleged tortious conduct? The answer may be yes even if the employee performs negligently or is motivated by ulterior motives or personal animus so long as the conduct itself was pursuant to her job responsibilities.
*849 Laverie , 517 S.W.3d at 753. Negligence, if proven, does not destroy the protection of section 101.106 for an employee acting within the scope of her employment. As it stands, Vaughn's negligence has not been evaluated by a trier of fact; however, the record is clear that she was acting within the scope of her employment because she was driving the bus on its regular route when the accident occurred.
Certainly, there might be a different result if Vaughn had been acting outside the scope of her employment (for example, by driving a route other than what was prescribed). E.g. , Goodyear Tire & Rubber Co. v. Mayes , 236 S.W.3d 754, 757-58 (Tex. 2007) (holding that an employee was not acting in furtherance of his employer's business, and therefore, his employer was not liable, when the employee drove his employer's truck to a convenience store at 3:00 a.m. to purchase cigarettes, fell asleep at the wheel, and hit a motorist head-on, even though he had possession of the truck, had a morning delivery to make, was available via pager twenty-four hours a day, and was not restricted from using the employer's truck for personal business). Similarly, there might be a different outcome if she had acted intentionally. See Fink v. Anderson , 477 S.W.3d 460, 467 n.3 (Tex. App.-Houston [1st Dist.] 2015, no pet.) (outlining this Court's holdings on whether an employer can escape liability under respondeat superior by arguing that intentional torts do not fall within the scope of employment). However, neither scenario is at issue here, and we need not decide them in this case. Vaughn's job was to drive the bus along a prescribed route, and she acted within the scope of her employment by doing exactly that. Therefore, we hold that she is entitled to the protection of the TTCA's election-of-remedies provision.
V. Attorney's Fees
Rodriguez and New Hampshire Insurance both argue that the Transit Defendants waived the issue of attorney's fees by not preserving it in their petition for review. We disagree. A petition for review must state all issues or points presented for review, and issues not presented in the petition for review are waived. TEX. R. APP. P. 53.2(f) ; Guitar Holding Co., L.P. v. Hudspeth Cty. Underground Water Conservation Dist. No. 1 , 263 S.W.3d 910, 918 (Tex. 2008). A petitioner's brief on the merits must be confined to the issues stated in the petition for review. TEX. R. APP. P. 55.2(f).
The Transit Defendants raised the issue of attorney's fees in their petition for review briefly in the prayer:
Petitioners ask this Court to reverse the judgment of the court of appeals and render an award of reasonable and necessary attorneys fees which have been established as a matter of law or ... to reverse the judgment of the court of appeals and remand this case to the trial court on the sole issue of Petitioners' attorneys fees.
"We liberally construe issues presented to obtain a just, fair, and equitable adjudication of the rights of the litigants." Kachina Pipeline Co., Inc. v. Lillis , 471 S.W.3d 445, 455 (Tex. 2015) (quoting El Paso Nat. Gas Co. v. Minco Oil & Gas, Inc. , 8 S.W.3d 309, 316 (Tex. 1999) ). In Kachina Pipeline , the petitioner phrased the request for attorney's fees conditionally and presented it in a footnote. Id. We held that the petitioner nonetheless preserved the issue. Id. Here too, although the issue was presented only briefly in the petition for review, it was nonetheless presented and is therefore properly before us.
Having determined that the issue was not waived, we turn to the merits *850 of the Transit Defendants' request for attorney's fees. The Transit Defendants argue that they are entitled to reasonable attorney's fees on the basis of their interpleader action. We review a trial court's award of attorney's fees for an abuse of discretion. Ragsdale v. Progressive Voters League , 801 S.W.2d 880, 881 (Tex. 1990) (per curiam); Broesche v. Jacobson , 218 S.W.3d 267, 277 (Tex. App.-Houston [14th Dist.] 2007, pet. denied).
Texas law recognizes that disinterested stakeholders should be afforded a method by which they are able to proceed when they are subjected to conflicting claims. Taliaferro v. Tex. Commerce Bank , 660 S.W.2d 151, 153 (Tex. App.-Fort Worth 1983, no writ.). An interpleader suit is thus authorized by Texas Rule of Civil Procedure 43 when such a stakeholder is "exposed to double or multiple liability." TEX. R. CIV. P. 43 ; Taliaferro , 660 S.W.2d at 153. A party is entitled to interpleader relief when it establishes three elements: (1) it is either subject to, or has reasonable grounds to anticipate, rival claims to the same funds; (2) it has not unreasonably delayed filing its action for interpleader; and (3) it has unconditionally tendered the funds into the registry of the court. Young v. Gumfory , 322 S.W.3d 731, 743 (Tex. App.-Dallas 2010, no pet.). The Texas rule is that the innocent stakeholder in an interpleader is entitled to attorney's fees to be paid out of the interpleaded funds. State Farm Life Ins. Co. v. Martinez , 216 S.W.3d 799, 803 (Tex. 2007) ; U.S. v. Ray Thomas Gravel Co. , 380 S.W.2d 576, 581 (Tex. 1964) ; AMX Enters., L.L.P. v. Master Realty Corp ., 283 S.W.3d 506, 523 (Tex. App.-Fort Worth 2009, no pet.).
In Rodriguez's motion for partial summary judgment, she asserted that there was no evidence that MTI had unconditionally tendered funds into the registry of the court, that it was exposed to double or multiple liability, or that it was an innocent, disinterested stakeholder. The Transit Defendants alleged that the interpleader was filed with the belief that the statutory limit under the TTCA applied cumulatively, such that $100,000 was the maximum liability for all of the defendants combined. Thus, the two separate lawsuits filed by New Hampshire Insurance and Rodriguez potentially subjected MTI to double liability. The Transit Defendants explain the year-long gap between the filing of Rodriguez's suit and the filing of the interpleader by pointing to continued settlement efforts with New Hampshire Insurance and Rodriguez.
The fact that the two cases were consolidated and New Hampshire Insurance ultimately nonsuited its claims is irrelevant to our determination of whether the interpleader was proper. On this question, we are persuaded by federal cases holding that interpleader jurisdiction is determined at the time the interpleader complaint is filed. See Auto Parts Mfg. MS, Inc. v. King Constr. of Houston, L.L.C. , 782 F.3d 186, 193-94 (5th Cir. 2015) (holding that a properly-filed interpleader did not become improper even when the prospect of multiple adverse claims against the interpleaded funds was eliminated); Walker v. Pritzker , 705 F.2d 942, 944 (7th Cir. 1983) ("[I]nterpleader jurisdiction is determined at the time suit is filed and subsequent events do not divest the court of jurisdiction once properly acquired."); Smith v. Widman Trucking & Excavating, Inc. , 627 F.2d 792, 799 (7th Cir. 1980) (holding that, in a statutory interpleader action, "[i]f jurisdiction exists at the outset of a suit, subsequent events will not divest the court of jurisdiction"). Thus, we limit our inquiry to the initial interpleader petition and the amended petition.
A proper interpleader action requires that the interpleading party has *851 unconditionally tendered the fund or property at issue into the court's registry. Gumfory , 322 S.W.3d at 743 ; Hanzel v. Herring , 80 S.W.3d 167, 173 (Tex. App.-Fort Worth 2002, no pet.). While MTI did not contest liability in its initial interpleader petition, in the amended petition the Transit Defendants took a different position. They asserted that Rodriguez's claims were defensible, but if the trial court accepted the interpleader and dismissed all of the claims against them, they would not choose to put up a defense-thereby conditioning their tender on the trial court's acceptance of their argument that their cumulative liability was capped at a single, $100,000 cap. The court of appeals was correct, then, in concluding that "[i]n essence, the [T]ransit [D]efendants made a settlement offer." 546 S.W.3d at 197. We hold that, in this regard, the Transit Defendants failed to satisfy the required interpleader element of unconditional tender.
Moreover, even if the Transit Defendants' tender had been unconditional, we have held that attorney's fees in an interpleader are available only to an innocent, disinterested stakeholder. Ray Thomas Gravel Co. , 380 S.W.2d at 581 ; see also Sanders v. Armour Fertilizer Works , 292 U.S. 190, 200, 54 S.Ct. 677, 78 L.Ed. 1206 (1934) ("Assertion by the complainant of entire disinterestedness is essential to a bill of interpleader."); Kelsey v. Corbett , 396 S.W.2d 440, 442 (Tex. Civ. App.-El Paso 1965, writ ref'd n.r.e.) ("We see no basis for such allowance of attorney's fees [for the Tax Assessor-Collector], since the Tax Assessor-Collector was not in the true position of a stakeholder but was, in fact, a party defendant."); Wolf v. Horton , 322 So.2d 71, 73 (Fla. Dist. Ct. App. 1975) ("In order to be entitled to such an award, a plaintiff must prove his total disinterest in the stake he holds other than that of bringing it into court so that conflicting claims thereto can be judicially determined."). Rodriguez argues that the Transit Defendants are not innocent, disinterested stakeholders because (1) MTI voluntarily subjected itself to double or multiple liability by intervening in New Hampshire Insurance's suit, and (2) the Transit Defendants were the negligent parties that caused the damages sought by Rodriguez and New Hampshire Insurance.
"When the interpleading party is responsible for the conflicting claims to the funds or property, that party is not entitled to attorney's fees incurred in interpleading the claimants." Brown v. Getty Reserve Oil, Inc. , 626 S.W.2d 810, 815 (Tex. App.-Amarillo 1981, writ dism'd w.o.j.) ; see also Wolf , 322 So.2d at 73 (requiring an interpleading claimant to show "that he did nothing to cause the conflicting claims or to give rise to the peril of double vexation"). When MTI filed its initial petition for interpleader, it was not subject to double liability because it was not a party to the lawsuit involving New Hampshire Insurance; instead, it entered the lawsuit as an intervenor. However, MTI's counsel testified at the hearing on attorney's fees that it intervened in anticipation of being drawn into that lawsuit: "I believe[d] we could not keep them out of that lawsuit.... Because I defend these cases periodically and people have a hard time identifying the right defendant, which is always [MTI]." Rule 43 allows a party to obtain an interpleader when it "is or may be exposed to double or multiple liability." TEX. R. CIV. P. 43 (emphasis added). We are satisfied that MTI's potential for double liability met the requirement of Rule 43.
However, we agree with Rodriguez's argument that the Transit Defendants-as the parties who are alleged to *852 have negligently caused the damage-are not innocent, disinterested stakeholders. Although this Court has not defined "innocent, disinterested stakeholder," Black's Law Dictionary defines each of these terms. See Innocent, BLACK'S LAW DICTIONARY (10th ed. 2014) ("free from legal fault"); Disinterested , id. ("not having a pecuniary interest in the matter at hand"); Stakeholder , ids="9648375" index="119" url="https://cite.case.law/so-2d/322/71/#p73">id. ("[a] disinterested third party who holds money or property, the right to which is disputed between two or more other parties."). "Under the unambiguous meaning of term 'disinterested stakeholder,' a party who asserts a claim to the interpleaded funds is not a disinterested stakeholder." FinServ Cas. Corp. v. Transamerica Life Ins. Co. , 523 S.W.3d 129, 141 (Tex. App.-Houston [14th Dist.] 2016, pet. denied). The Transit Defendants' assertion that the claims against them were defensible and that they would put up a defense if their interpleader terms were not accepted necessarily defeats their proposed status as a disinterested stakeholder.[10]
Even absent the defensibility assertion, the Transit Defendants' position as the alleged tortfeasors prevents them from being a "disinterested stakeholder." Texas courts have held, for example, that interpleader is proper to protect an insurance company facing competing claims over benefits. See, e.g. , Cable Commc'n Network, Inc. v. Aetna Cas. & Sur. Co. , 838 S.W.2d 947, 950 (Tex. App.-Houston [14th Dist.] 1992, no writ) (citing Great Am. Reserve Ins. Co. v. Sanders , 525 S.W.2d 956, 958 (Tex. 1975) ). Similarly, interpleader is proper to protect a bank when multiple claimants assert claims to funds in an account. See, e.g. , Bryant v. United Shortline Inc. Assurance Servs., N.A. , 984 S.W.2d 292, 296-97 (Tex. App.-Fort Worth 1998), aff'd in part, modified in part by Bryant v. United Shortline Inc. Assurance Servs., N.A. , 972 S.W.2d 26 (Tex. 1998) ). But we find no precedent to support extending the protection of interpleader-and the accompanying attorney's fees-to an alleged tortfeasor/defendant. Moreover, the allowance of attorney's fees for an alleged tortfeasor/defendant attempting to interplead the extent of his liability is adverse to public policy. Counsel for New Hampshire Insurance offered a simplified explanation during the hearing on attorney's fees:
[It's] the same thing as if I'm driving down the street on the way home today and I hit a car with two people in it and I injure the driver and I injure the passenger. And they turn around to me and they say ["]We're both going to sue you for money.["] I've only got [ ] $1,000. I can't give you more than [$]1,000. That's all I have, and I have no insurance. Okay. ["]Well,["] driver says, ["]I want $1,000["]; passenger says ["]I want $1,000.["] I'm like, ["]conflicting claims. I'm going to interplead this to the court. Judge, I'm interpleading it. I'm an attorney. It costs me [ ] $1,000 to do that, so I'll take the $1,000 back. Sorry, guys, you get nothing.["]
Interpleader is not a vehicle to allow an interested party-an alleged tortfeasor/defendant-to escape the burdens of litigation. We therefore affirm the part of the court of appeals' judgment that the Transit Defendants are not entitled to attorney's fees, but on different grounds.[11] Moreover, *853 because the interpleader was improper, the interpleaded funds should be returned to the party that deposited them if they remain in the court's registry, and any judgment rendered as a result of the proceedings on remand will be separate and distinct from those funds. Because the interpleader was improper and the merits of Rodriguez's negligence claim have not yet been tried, we affirm the court of appeals' remand to the trial court for further proceedings, but consistent with this opinion.
VI. Conclusion
We hold that the TTCA's damages cap applies cumulatively when independent contractors perform essential governmental functions for a transportation authority under Transportation Code chapter 452. See TEX. CIV. PRAC. & REM. CODE § 101.023 ; TEX. TRANSP. CODE § 452.056. The plain language of section 452.056 is clear that an independent contractor operating a public transportation system on behalf of a regional authority shall be treated as the government for liability purposes; therefore, that contractor can be liable only to the extent that the authority would be liable if it were performing the same function. MTA and MTI thus are entitled to the same limitation on liability as the governmental unit would be if it performed that function. If FWTA were operating its own bus transportation system, its liability would be limited to a maximum of $100,000. The Transit Defendants' cumulative liability is likewise limited to one $100,000 cap. We further hold that section 452.056 brings Vaughn under the protection of the TTCA's election-of-remedies provision. See TEX. CIV. PRAC. & REM. CODE § 101.106. Finally, we hold that the Transit Defendants' interpleader was improper. They were not innocent, disinterested stakeholders in the litigation, and therefore are not entitled to attorney's fees based on their attempted interpleader. For the reasons expressed above, we reverse the judgment of the court of appeals in part and reinstate the judgment of the trial court as to the damages-cap and election-of-remedies issues. We affirm the court of appeals' denial of attorney's fees but on different grounds, and we affirm the remand to the trial court for further proceedings, but consistent with this Court's opinion.
Justice Johnson filed a dissenting opinion, in which Justice Lehrmann and Justice Boyd joined.
Justice Blacklock did not participate in the decision.
JOHNSON, joined by JUSTICE LEHRMANN and JUSTICE BOYD, dissenting.
Assuming McDonald Transit Associates, Inc. (MTA) and McDonald Transit, Inc. (MTI) are governmental entities for purposes of liability as the Court says they are, in my view, Rodriguez is correct that under the Texas Tort Claims Act (1) her damages are not cumulative as to Fort Worth Transportation Authority (FWTA), MTA, and MTI, so her potential recovery against all three is not limited to $100,000; and (2) her suit against Vaughn is not *854 barred. I respectfully dissent from the Court's conclusions otherwise and its judgment based on those erroneous conclusions.
I. The Statutes
Under the Texas Tort Claims Act (TTCA), the Legislature has, in part, waived a governmental unit's immunity as to injuries or death arising from the operation or use of a motor-driven vehicle. TEX. CIV. PRAC. & REM. CODE § 101.021. As relevant to this matter, the waiver allows damages of up to $100,000 per person to be recovered from a unit of local government. Id. § 101.023(b). And under the election-of-remedies provision of the TTCA, "[t]he filing of a suit under this chapter against a governmental unit constitutes an irrevocable election by the plaintiff and immediately and forever bars any suit or recovery by the plaintiff against any individual employee of the governmental unit regarding the same subject matter." Id. § 101.106(a).
The Transportation Code purports to limit the liability of certain private operators who contract with and perform functions of regional transportation authorities:
A private operator who contracts with an authority under this chapter is not a public entity for purposes of any law of this state except that an independent contractor ... that ... performs a function of the authority ... is liable for damages only to the extent that the authority or entity would be liable if the authority or entity itself were performing the function ....
TEX. TRANSP. CODE § 452.056(d) (emphasis added).
II. Discussion
A. The Entities
I agree with the Court that by enacting section 452.056, the Legislature did not attempt to grant private contractors immunity from damages. Rather, it attempted to limit the extent of their liability. Ante at 841-42. Rodriguez does not challenge the Legislature's authority to limit the liability of MTI and MTA, but she asserts that nothing in the language of section 452.056 limits her potential recovery from the three entities involved-FWTA, MTA, and MTI-to a cumulative total of $100,000. The Court concludes otherwise. It says that because of the statute, "the liability of independent contractors performing essential governmental functions is limited to a single damages cap under the TTCA." Ante at 845. However, the statutory text does not support that conclusion.
The Court looks to the functions performed by MTA and MTI and concludes that they acted jointly in operating the public transportation system. The Court then concludes that the damages cap applies cumulatively because FWTA's liability would be limited to $100,000 if it had performed all of the functions necessary to operate the transportation system, including those performed by MTA, MTI, and their employees. And while the Court may be correct regarding the extent of FWTA's liability if it itself had performed all the activities relevant to Rodriguez's claim, section 452.056 does not limit the liability of individual independent contractors, such as MTA and MTI, based on the functions they contracted to perform. Although the language of the statute limits a private operator's liability when it performs a function of an authority, the limit applies to "an independent contractor." TEX. TRANSP. CODE § 452.056(d) (emphasis added). MTA is an independent contractor performing functions of FWTA. So is MTI. Applying the statute to each as "an independent contractor" yields the result that each is liable for damages to the extent FWTA would be liable had it performed "the function." Nothing in the statute provides *855 that if multiple private operators have contracted with an authority, then either their functions must be considered to determine whether those functions are joint or the total of their liabilities is in any way combined.
The Court concludes that "the Legislature has instructed that, for the purpose of liability, an independent contractor performing the function of an authority ... should be treated as if it were the governmental unit performing that function." Ante at 846. Contrary to the Court's statement, though, nothing in the language of section 452.056(d) either explicitly or implicitly "instructs" that such an independent contractor should be treated as a governmental entity.
In construing statutes, we strive to give effect to the Legislature's intent, looking for that intent first and foremost in the plain language of the statute. Lippincott v. Whisenhunt , 462 S.W.3d 507, 509 (Tex. 2015). In subsection 452.056(d), the Legislature chose to limit the liability of private operators for damages only to the extent that a transportation authority would be liable. Nothing in the language of section 452.056 indicates the Legislature intended to extend full governmental status to private contractors. See id. at 508 ("A court may not judicially amend a statute by adding words that are not contained in the language of the statute. Instead, it must apply the statute as written."). If the Legislature had so intended, it would, and should, have said so. Moreover, and to the exact contrary, the Legislature made clear that it was limiting the governmental attributes it extended to private operators by stating that a private operator is "not a public entity." TEX. TRANSP. CODE § 452.056(d) (emphasis added).
The Court continues by concluding that applying the TTCA damages cap to each individual contractor would essentially multiply the cap and run counter to the Legislature's intent to limit the government's liability and encourage the use of independent contractors. Ante at 845. But as explained above, the Legislature explicitly chose not to treat private operators as governmental entities. TEX. TRANSP. CODE § 452.056(d). And limiting the liability of each individual contractor to $100,000, the amount for which FWTA could be liable under the TTCA, will still result in limited liability for FWTA. Moreover, there is nothing in this record hinting that limiting the liability of independent contractors to $100,000 each will discourage contractors from bidding on government contracts or discourage governmental entities from using contractors when appropriate. To the contrary, experience and common sense instruct otherwise. There is no shortage of independent contractors willing to bid on and perform government contracts.
In Brown & Gay Engineering, Inc. v. Olivares , we recently considered whether to extend the protections of immunity to private contractors. 461 S.W.3d 117, 122 (Tex. 2015). We explained that the rationale for and purpose supporting sovereign and governmental immunity is protection of the public fisc. Id. at 121-22. We noted that such immunity guards against unforeseen expenditures associated with defending lawsuits and paying judgments and that "private companies can and do manage their risk exposure by obtaining insurance." Id. at 121-23. We concluded that "[e]ven if holding a private party liable for its own improvident actions in performing a government contract indirectly leads to higher overall costs to government entities in engaging private contractors, those costs will be reflected in the negotiated contract price." Id. at 123. Because extending immunity to the private contractor would not have furthered the purpose of immunity, we declined to do so. Id. at 124.
*856 In this case, we should follow the principles we expressed in Brown & Gay Engineering. While the Court concludes that section 452.056 does not attempt to extend full immunity to private contractors, it also concludes that it could not have been the Legislature's intent to allow a transportation authority's use of independent contractors to result in an increase in the amount of a recovery under the TTCA. Ante at 845. But applying the damages cap to MTA and MTI individually does not expand the liability of FWTA under the TTCA. It is one thing to protect governmental entities and the public fisc from judgments. It is another to limit the liability of a private party and thereby shift the burden of injury from the tortfeasor to the injured person just because the tortfeasor was performing a governmental function when it caused the injury. The organizational model of FWTA, MTA, and MTI as independent entities did not come about by happenstance. Indeed, it would blink reality to even think that the three entities, with their intricate divisions of responsibilities, liabilities, and relationships, were the result of other than careful planning and documentation. In some tangential way, the public fisc may be affected where private contractor tortfeasors can be sued by persons they injure because the contractor's bid price likely will include some amount for liability insurance premiums and related costs. See Brown & Gay Engineering , 461 S.W.3d at 122. But where the liability of a governmental entity such as FWTA is limited regarding injuries caused by independent contractors such as MTI and MTA, both the purpose underlying governmental immunity-protection of the public fisc-and the purpose underlying the tort system-requiring wrongdoers to compensate those they have injured-are fulfilled. Moreover, private entities assume the risks of defending against, and potential liability for, tort claims on a daily basis. That is so whether they are performing governmental functions under contracts with the government or performing nongovernmental functions under contracts with private parties: it is part of doing business. Indeed, those risks are part of every nongovernmental entity's daily existence.
B. The Bus Driver Employee
The Court next concludes that "for the purpose of liability, an independent contractor performing essential governmental functions under chapter 452 of the Transportation Code shall be treated as the government; therefore, the employees of such an independent contractor are to be treated as employees of the government for purposes of liability."Ante at 847. Of course, the TTCA would not apply to Leshawn Vaughn and would not even be part of the discussion if she were not employed by a governmental unit. And as noted above, I disagree with the Court that MTA and MTI either are, or should be treated as, governmental units. But, even given the Court's mistaken conclusion regarding their status and treatment, the Court errs in its analysis regarding whether the TTCA's election of remedies provision applies to Vaughn.
The TTCA provides that "[t]he filing of a suit under this chapter against a governmental unit constitutes an irrevocable election by the plaintiff and immediately and forever bars any suit or recovery by the plaintiff against any individual employee of the governmental unit regarding the same subject matter." TEX. CIV. PRAC. & REM. CODE § 101.106(a). But the Act specifically excludes employees of independent contractors from the definition of "employee." Id. § 101.001(2). The Court acknowledges this language, but concludes that despite it, "an independent contractor performing essential governmental functions under *857 chapter 452 of the Transportation Code shall be treated as the government; therefore, the employees of such an independent contractor are to be treated as employees of the government for purposes of liability." Ante at 856. This is directly contrary to what the statute actually says. TEX. CIV. PRAC. & REM. CODE § 101.001(2).
In disregarding the plain statutory language as to Vaughn, the Court relies on Klein v. Hernandez , 315 S.W.3d 1 (Tex. 2010) to support treating "an employee of a private entity as an employee of the government when that employee was performing a governmental function." Ante at 847. In Klein , this Court addressed whether a doctor who was a resident physician in a private medical school, but who was working at a public hospital, was to be treated as a public employee. 315 S.W.3d at 2, 4. The statute in question in Klein provided that such a resident physician "is an employee of a state agency for purposes of ... determining the liability, if any, of the person." Id. at 4-5 (quoting TEX. HEALTH & SAFETY CODE § 312.007(a) ). But the statute here contains no similar language; it does not address employees at all. Even assuming the Legislature intended for MTI to be treated as the government as the Court concludes, if the Legislature intended the TTCA to encompass employees of private operators, it easily could have said so. And its failure to say so creates a presumption that it purposefully intended not to say so. See Lippincott , 462 S.W.3d at 510 ("The plain language of the statute imposes no requirement that the form of the communication be public. Had the Legislature intended to limit the Act to publicly communicated speech, it could have easily added language to that effect."); TGS-NOPEC Geophysical Co. v. Combs , 340 S.W.3d 432, 439 (Tex. 2011) ("We presume that the Legislature chooses a statute's language with care, including each word chosen for a purpose, while purposefully omitting words not chosen."). Because the statutory language here does not purport to provide any protection to Vaughn-even considering the Court's erroneous conclusion that her employer, MTI, is to be treated as a governmental entity-I disagree that Klein supports the Court's conclusion that Rodriguez's claim is barred.
C. Constitutionality
This appeal does not present the question of constitutionality of section 452.056(d)'s language limiting the liability of private operators who contract with a transportation authority. I point out, though, that the Texas Constitution expressly addresses the Legislature's authority to limit a party's liability. TEX. CONST. art. III, § 66. The effect of that provision's adoption and its language is an important issue that will at some point have to be addressed.
III. Conclusion
I would affirm the judgment of the court of appeals holding that (1) Rodriguez's claim is not limited to a single cumulative total recovery of $100,000 from defendants FWTA, MTA, and MTI; and (2) Rodriguez's claim as to Vaughn is neither subject to dismissal under, nor limited in amount by, the TTCA.

The original damages-cap language read, "Liability hereunder shall be limited to $100,000 per person ...." Tex. Rev. Civ. Stat. art. 6252-19, § 3 (1970), repealed by Act of 1985, 69th Leg., ch. 959, § 9(1), eff. Sept. 1, 1985 (emphasis added). The current version replaced this language with "$100,000 for each person ." Tex. Civ. Prac. & Rem. Code § 101.023(b).

We do not answer the broader question of whether the Legislature in fact has authority to confer (as opposed to waive) immunity. See LTTS Charter Sch., Inc. v. C2 Constr., Inc. , 342 S.W.3d 73, 78 n. 44 (Tex. 2011) (reserving judgment on that question). Here, the Legislature did not purport to do so.

In this way, section 452.056 is not dissimilar from statutes that limit the liability of health care providers, e.g. , Tex. Civ. Prac. & Rem. Code § 41.0105 ("[R]ecovery of medical or health care expenses incurred is limited to the amount actually paid or incurred by or on behalf of the claimant."), which is specifically authorized by the constitution. Tex. Const. art. III, § 66 ("[T]he legislature by statute may determine the limit of liability for all damages and losses, however characterized, other than economic damages, of a provider of medical or health care with respect to treatment, lack of treatment, or other claimed departure from an accepted standard of medical or health care.").

To provide a concrete example: If FWTA handled all functions involved in operating the Fort Worth bus transportation system-including route design, scheduling, hiring and supervision of drivers, bus maintenance, accounting and budgeting, marketing, public relations, etc.-its liability would be limited to $100,000. If FWTA performed only one function-route design, for example-and outsourced the rest, its liability would still be limited to $100,000. Thus, FWTA's liability is collective as to all functions. The liability limit for independent contractors is likewise collective because damages are capped at the amount FWTA would incur, and under section 101.023, FWTA's liability for any number of functions cannot exceed $100,000.

The bill that was adopted read, in relevant part: "If an independent contractor of the authority is performing a function of the authority, the contractor is liable for damages to the extent that the authority would be liable if the authority itself were performing the function." H.B. 1453, 70th Leg., R.S. (1987). The rejected version included "only": "Insofar as any independent contractor of the authority is performing any function of the authority, such contractor shall be liable for damages only to the extent the authority would be liable were the authority itself performing such action." H.B. 2400, 70th Leg., R.S. (1987) (emphasis added).

Of course, our general rule is that extrinsic aids, including legislative history, are inappropriate "to construe" an unambiguous statute. E.g. , Melden & Hunt, Inc. , 520 S.W.3d at 893. However, such history may be appropriate to give context to our construction. E.g. , Ojo v. Farmers Group, Inc. , 356 S.W.3d 421, 430 (Tex. 2011) (referencing legislative history to show that the Legislature was aware of the possibility of negative consequences of its language when it drafted the statute at issue); see also , id. at 436-48 (Jefferson, C.J., concurring) (observing that the court's use of legislative history did not depart from the general rule: "When used in this contextual manner, there is little reason to think legislative history inappropriate for citation."). Here too, the legislative history of the statute offers some context for our understanding of the Legislature's intentional use of "only."

Both parties support their proposed construction of the relevant statutes with Tarrant Cty. Water Control & Improvement District No. 1 v. Crossland , 781 S.W.2d 427 (Tex. App.-Fort Worth 1989, writ denied), disapproved of on other grounds by City of Dall. v. Mitchell , 870 S.W.2d 21 (Tex. 1994). In that case, plaintiffs brought wrongful-death actions against the Water District, the Parks and Wildlife Department, and the Highway Department after a boating accident. Id. at 430. The court of appeals held that the Parks and Wildlife Department and the Highway Department were a single entity-the State of Texas-and therefore were subject to a single cap under the TTCA. Id. at 438-39. But it held that the Water District was a separate entity and subject to its own cap under the TTCA. Id. The facts of that case implicate multiple government units, which are not at issue in this case. Our holding in this case limits the application of the TTCA damages cap to independent contractors performing essential government functions.

Of course, the cumulative application of the damages cap requires the defendants to sort out their respective shares of liability and damages; thus it is akin to joint and several liability. Cf. Am. Star Energy & Minerals Corp. v. Stowers , 457 S.W.3d 427, 432 (Tex. 2015) (describing joint and several liability in the partnership context).

Rodriguez argues that this reasoning is inconsistent with Castro v. Cammerino , 186 S.W.3d 671 (Tex. App.-Dallas 2006, pet. denied). In Castro , a pedestrian brought a personal-injury action against a bus driver employed by an independent contractor pursuant to a contract with Dallas Area Rapid Transit (DART), for injuries she suffered when she was struck by a bus. Id. at 673. The court of appeals held that although the bus driver wore a DART uniform and drove a DART bus, he was an employee of an independent contractor, and therefore was not entitled to protection under the election-of-remedies provision. Id. at 678-79. The court of appeals' construction of the relevant provisions of the TTCA opens a loophole that creates unlimited liability for the employee of a contractor who is performing an essential governmental function. This does not comport with the TTCA or the intent behind it. Therefore, we disapprove Castro to the extent that it is contrary to our opinion here.

Because the Transit Defendants are not disinterested stakeholders, we need not decide here what "innocent" means in this context.

The court of appeals held that the Transit Defendants did not provide sufficient evidence of the legal work they had done to support their requested attorney's fees under the lodestar method. 546 S.W.3d at ----. It held that the Transit Defendants "requested" the lodestar method at the hearing on attorney's fees, when one of the Transit Defendants' attorneys was asked if he was basing his fee request on the lodestar method and he answered, "I assume so." Id. We doubt that "I assume so" amounts to a request. However, because our conclusion that the Transit Defendants are not disinterested stakeholders is dispositive on the issue of attorney's fees, we do not reach this question. Nor do we reach the question of whether the Transit Defendants' evidence, which did not include billing records, was sufficient to support their requested fees.