# Supreme Court of Texas

---

No. 20-0856

---

The Gulf Coast Center,

*Petitioner*,

v.

Daniel Curry, Jr.,

*Respondent*

---

On Petition for Review from the
Court of Appeals for the First District of Texas

---

**Argued September 22, 2022**

JUSTICE HUDDLE delivered the opinion of the Court.

Governmental immunity prohibits courts from adjudicating claims against political subdivisions of the state government. But the Texas Tort Claims Act waives that immunity for certain claims against a governmental unit. The issue in this case is whether the Act's caps on the *amount* of a governmental unit's liability conscribe the trial court's jurisdiction to render a judgment exceeding the cap or are merely an affirmative defense that must be pleaded and proven by the government defendant. We hold that the damages caps implicate the court's

jurisdiction and limit the scope of the Legislature's waiver of a governmental unit's immunity from suit. A governmental defendant thus retains its immunity from suit as to a claim that exceeds the applicable damages cap, so courts lack jurisdiction to render a judgment for an amount exceeding the cap. When, as here, the plaintiff establishes that the Act applies but fails to establish which cap applies, the plaintiff has failed to demonstrate that the trial court has jurisdiction to render a judgment exceeding the minimum statutory cap. We therefore reverse the trial court's judgment and remand to that court for rendition of a judgment in accordance with the Act.

## I.    Background

The Gulf Coast Center provides services for people with intellectual disabilities in Galveston and Brazoria Counties. One of the services it provides is public transportation by bus to assist its patients in getting to Gulf Coast's facility. Daniel Curry was crossing the street when he was hit by such a bus driven by a Gulf Coast employee. Curry sued Gulf Coast for his resulting injuries.

Curry's petition alleges that Gulf Coast is a "governmental unit" and that the Tort Claims Act waived Gulf Coast's immunity from suit and from liability. In its answer, Gulf Coast agreed that it is a governmental unit and alleges that it is "protected from suit and liability by the doctrine of governmental immunity" and that its liability, if any, is limited by the Act.

Following a trial, the jury found Gulf Coast negligent and awarded Curry $216,000. Curry sought judgment for the full amount of the verdict plus interest and costs, asserting that the total "does not

2

exceed the applicable $250,000.00 statutory cap." Gulf Coast objected, arguing (among other things) that the Tort Claims Act capped its liability at $100,000 and the judgment thus could not exceed that amount. The trial court overruled Gulf Coast's objection and rendered judgment as Curry requested. Gulf Coast filed a motion to reform the judgment to comply with the $100,000 cap, which the trial court denied. The court of appeals affirmed the judgment for Curry. 644 S.W.3d 370 (Tex. App.—Houston [1st Dist.] 2020). Gulf Coast petitioned for review, asking the Court to render judgment consistent with the Act.[1]

## II. Applicable Law

### A. Sovereign and Governmental Immunity

Texas has long recognized that sovereign immunity protects the State of Texas against lawsuits for damages unless the State consents to be sued. *Fed. Sign v. Tex. S. Univ.*, 951 S.W.2d 401, 405 (Tex. 1997); *see Hosner v. DeYoung*, 1 Tex. 764, 769 (1847) ("[N]o state can be sued in her own courts without her consent, and then only in the manner indicated by that consent."). There are two related but distinct principles of sovereign immunity: immunity from suit and immunity from liability. *Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999). The State can waive immunity from suit, immunity from liability, or both. *State v. Lueck*, 290 S.W.3d 876, 880 (Tex. 2009).

Immunity from suit bars an action against the State unless the State consents to the suit. *Jones*, 8 S.W.3d at 638. Immunity from suit

---

[1] In the court of appeals, Gulf Coast also challenged the sufficiency of the evidence to support certain damages findings and the admission of affidavits regarding Curry's medical expenses. Gulf Coast does not press either of these arguments in this Court.

thus presents a jurisdictional question of whether the State has expressly consented to suit.[2] *Lueck*, 290 S.W.3d at 880. Consent to suit must ordinarily be found in a constitutional provision or legislative enactment. *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 695 (Tex. 2003).

Immunity from liability, in contrast, protects the State from judgment even if the Legislature has expressly consented to the suit. *Jones*, 8 S.W.3d at 638 (citing *Fed. Sign*, 951 S.W.2d at 405). Immunity from liability, unlike immunity from suit, does not affect a court's jurisdiction to hear a case. *Id.* This Court has described immunity from liability as an affirmative defense, which must be pleaded lest it be waived. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224 (Tex. 2004); *Jones*, 8 S.W.3d at 638.

While sovereign immunity protects the State and its agencies, governmental immunity provides similar protection to the State's political subdivisions, such as counties, cities, and school districts. *Travis Cent. Appraisal Dist. v. Norman*, 342 S.W.3d 54, 57–58 (Tex. 2011). Although sovereign and governmental immunity are distinct, the terms are often used interchangeably. *Id.* at 58; *see Taylor*, 106 S.W.3d at 694 n.3.

---

[2] We recently clarified that, while sovereign immunity "implicates" a court's subject-matter jurisdiction, sovereign immunity does not equate to a lack of subject-matter jurisdiction for all purposes. *Engelman Irrigation Dist. v. Shields Bros.*, 514 S.W.3d 746, 753, 755 (Tex. 2017) (rejecting a claim that sovereign immunity deprived the trial court of subject-matter jurisdiction and thus rendered a years-old final judgment void and subject to collateral attack). This case does not present the scenario we confronted in *Engelman* because Gulf Coast asserted governmental immunity and sought application of the Tort Claims Act's damages caps in the trial court.

4

In a suit against a governmental unit, the plaintiff must affirmatively demonstrate the court's jurisdiction by establishing a valid waiver of immunity. *Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 550 (Tex. 2019); *Dall. Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 542 (Tex. 2003); *see also Jones*, 8 S.W.3d at 638 ("The party suing the governmental entity must establish the state's consent . . . .").

## B.  Texas Tort Claims Act

The Legislature waives governmental immunity for certain tort claims through the Tort Claims Act. *See City of Dallas v. Sanchez*, 494 S.W.3d 722, 726 (Tex. 2016). Three sections of the Act are relevant here: Sections 101.021, 101.023, and 101.025.

Section 101.021 waives a governmental unit's[3] immunity from liability for certain types of claims. It states:

A governmental unit in the state is liable for:

(1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:

(A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and

(B) the employee would be personally liable to the claimant according to Texas law . . . .

---

[3] Section 101.001(3) of the Tort Claims Act defines a "governmental unit" that is subject to the Act. TEX. CIV. PRAC. & REM. CODE § 101.001(3).

TEX. CIV. PRAC. & REM. CODE § 101.021.[4]  There is no dispute that Gulf Coast is a "governmental unit in the state" and that Curry's claim is the type of personal-injury claim covered by Section 101.021(1).

For claims where liability is waived under Section 101.021, Section 101.023 limits the amount of the government's liability.  The applicable cap depends on the type of governmental unit being sued:

> (a)    Liability of the state government under this chapter is limited to money damages in a maximum amount of $250,000 for each person . . . for bodily injury or death . . . .
>
> (b)    Except as provided by Subsection (c), liability of a unit of local government under this chapter is limited to money damages in a maximum amount of $100,000 for each person . . . for bodily injury or death . . . .
>
> (c)    Liability of a municipality under this chapter is limited to money damages in a maximum amount of $250,000 for each person . . . for bodily injury or death . . . .
>
> (d)    Except as provided by Section 78.001, liability of an emergency service organization under this chapter is limited to money damages in a maximum amount of $100,000 for each person . . . for bodily injury or death . . . .

*Id.* § 101.023.[5]  Thus, if a defendant is "the state government" or "a municipality," then the Act limits liability for bodily injury to $250,000

---

[4] Section 101.021 also waives a governmental unit's immunity from liability for personal-injury claims caused by a condition or use of real or personal property.  TEX. CIV. PRAC. & REM. CODE § 101.021(2).  That provision does not apply in this case.

[5] Section 101.023 also establishes separate per-occurrence liability limits for bodily injury or death and for property damages.  Only the per-person limits are at issue in this case.

6

per person. *Id.* § 101.023(a), (c). But if a defendant is "a unit of local government" (other than a municipality) or "an emergency service organization," then the Act limits liability for bodily injury to $100,000 per person. *Id.* § 101.023(b), (d).

Finally, Section 101.025 states:

(a)     Sovereign immunity to suit is waived and abolished to the extent of liability created by this chapter.

(b)     A person having a claim under this chapter may sue a governmental unit for damages allowed by this chapter.

*Id.* § 101.025. Section 101.025 thus expressly limits the extent of its waiver of immunity from suit—it is not a wholesale waiver but, rather, a waiver that extends only as far as the Act elsewhere waives immunity from liability. Because the extent of Section 101.025's waiver of immunity from suit is determined by the Act's limits on liability, we have described the Tort Claims Act as "a unique statutory scheme in which the two immunities are co-extensive." *Sampson v. Univ. of Tex.*, 500 S.W.3d 380, 384 (Tex. 2016) (quoting *Miranda*, 133 S.W.3d at 224).

### III.    Analysis

Gulf Coast asks us to hold that its liability under the Tort Claims Act is limited to $100,000, the maximum amount that can be awarded for a claim against a unit of local government. TEX. CIV. PRAC. & REM. CODE § 101.023(b). Gulf Coast argues that applying the proper cap is a question of law because the damages caps in Section 101.023 limit the trial court's jurisdiction. Because a plaintiff has the burden to affirmatively demonstrate the court's jurisdiction, Gulf Coast contends that Curry had the burden to establish which damages cap applies and there is no evidence that a higher cap applied.

7

Alternatively, Gulf Coast argues that the evidence conclusively establishes it is a "unit of local government" under Section 101.023(b) and therefore subject to the $100,000 per-person cap. *Id.* Gulf Coast contends it is a "community center" established under Chapter 534 of the Health and Safety Code. *See* TEX. HEALTH & SAFETY CODE § 534.001. Section 534.001 states that a community center is "an agency of the state, a governmental unit, and a unit of local government, as defined and specified by [the Tort Claims Act]." *Id.* § 534.001(c)(1). Gulf Coast thus argues that the trial court should have limited its liability to $100,000.

The court of appeals disagreed. It concluded that the damages caps under Section 101.023 are an affirmative defense on which Gulf Coast had the burden of proof. 644 S.W.3d at 376. The court thus held that Gulf Coast had the burden either to obtain a jury finding or to present conclusive evidence that the lower ($100,000) cap applied. *Id.* Gulf Coast did not request a jury finding about which damages cap applied. And the court of appeals concluded that Gulf Coast failed to conclusively establish at trial that it was a unit of local government. *Id.* at 377. The court therefore held that the trial court did not err in awarding damages exceeding the $100,000 cap but below the $250,000 cap. *Id.*

We conclude that Section 101.023's limitations of liability are not an affirmative defense but, rather, implicate the trial court's jurisdiction by virtue of their incorporation in Section 101.025's waiver of immunity from suit. Thus, a trial court must ascertain, as part of determining its jurisdiction, whether *and to what extent* the Tort Claims Act waives

8

immunity from suit. *See Miranda*, 133 S.W.3d at 226–27 (stating that a trial court must consider the pleadings and relevant evidence of jurisdictional facts to determine its jurisdiction). The Act waives a governmental unit's immunity from suit "to the extent of liability" created by the Act. TEX. CIV. PRAC. & REM. CODE § 101.025(a). Section 101.025(b) similarly states that a person with a claim that otherwise satisfies the Act may sue "for damages allowed" by the Act. *Id.* § 101.025(b). The Act's waiver of immunity from suit is thus limited to the extent of recoverable damages under the applicable cap. Stated differently, a governmental unit retains its immunity from suit as to a claim for liability in excess of the appropriate cap.

Curry argues that the limits of liability in Section 101.023 do not implicate the trial court's jurisdiction because they do not relate to a governmental unit's immunity from suit. His argument relies primarily on a single statement in *Fort Worth Transportation Authority v. Rodriguez*, 547 S.W.3d 830 (Tex. 2018). In that case, the Court stated that "Section 101.023 limits only the liability of a governmental unit— it does not shield it from suit." *Id.* at 840. Curry interprets this statement to mean that the damages caps relate solely to immunity from liability and not immunity from suit. Thus, according to Curry, the damages caps are an affirmative defense that must be pleaded and proven by the defendant. *See Jones*, 8 S.W.3d at 638.

Curry reads too much into this lone sentence. *Rodriguez* concerned the extent of an independent contractor's liability under the

9

Transportation Code.[6] It did not address the relationship between the damages caps in Section 101.023 and the Act's waiver of immunity from suit in Section 101.025. Section 101.023 limits the governmental unit's liability, to be sure. And Curry correctly observes that, *standing alone*, Section 101.023 "does not shield [a defendant] from suit." *Rodriguez*, 547 S.W.3d at 840. But Section 101.025 does that work: it waives immunity from suit and defines the extent of that waiver by reference to Section 101.023's express limits of liability, *i.e.*, "to the extent of liability created by" the Tort Claims Act, including the limits or caps set out in Section 101.023. TEX. CIV. PRAC. & REM. CODE § 101.025(a). This construction is supported by Section 101.025(b), which authorizes suit "for damages allowed by" the Act. *Id.* § 101.025(b). Taken together, the text of Section 101.025 plainly establishes that a governmental unit retains its immunity from suit as to a claim that exceeds the liability limits in Section 101.023.

Curry presents two additional arguments why Section 101.025's waiver of immunity from suit is not limited by Section 101.023's damages caps. First, Curry contends that the damages caps only *limit* liability and thus do not constitute "liability created by" the Act. *Id.* § 101.025(a). This Court rejected a similar argument in *Miranda*. There, the Court analyzed Section 101.058 of the Tort Claims Act, which provides that the recreational use statute (Chapter 75 of the Civil

---

[6] Under Chapter 452 of the Transportation Code, a regional transportation authority is a governmental unit under the Tort Claims Act, and the transportation authority's independent contractors are liable for damages "only to the extent that the . . . authority would be liable." TEX. TRANSP. CODE §§ 452.052(c), .0561(c).

Practice and Remedies Code) controls "[t]o the extent that Chapter 75 limits the liability of a governmental unit." *Id.* § 101.058. The Court held that incorporating the other statute's additional limitations of liability "modifies a governmental unit's waiver of immunity from suit." *Miranda*, 133 S.W.3d at 225. In the same way, the limitations of liability in Section 101.023 circumscribe the waiver of immunity from suit in Section 101.025.

Second, Curry argues that Section 101.025(b)'s reference to "damages allowed by this chapter" refers only to types of damages, not the amounts. Nothing in the text of Section 101.025 supports this narrow reading. "Unless the statute provides a separate definition, we presume that the Legislature meant to use the ordinary meaning of a word . . . ." *Sunstate Equip. Co. v. Hegar*, 601 S.W.3d 685, 690 (Tex. 2020). "Damages" is defined as "[m]oney claimed by, or ordered to be paid to, a person as compensation for loss or injury." *Damages*, BLACK'S LAW DICTIONARY (11th ed. 2019). The Tort Claims Act does not provide a different definition, so we must presume the Legislature intended "damages" to include both the types of damages and the amount of money that a plaintiff may recover. In sum, we conclude that the Tort Claims Act incorporates the damages caps in Section 101.023 in its waiver of immunity from suit in Section 101.025.

Because the damages caps implicate jurisdiction, we conclude that the plaintiff has the burden to establish which cap applies. *See Town of Shady Shores*, 590 S.W.3d at 550 (stating that a plaintiff has the burden to affirmatively demonstrate the trial court's jurisdiction, which encompasses the burden of establishing a waiver of governmental

immunity). No one disputes that Curry established a personal-injury claim within the scope of Section 101.021. The Tort Claims Act thus waives Gulf Coast's immunity from suit, but only up to the applicable damages cap in Section 101.023.

Curry did not, however, satisfy his burden to prove that the $250,000 cap applies in this case. Under Section 101.023, a governmental unit's liability for personal-injury claims is limited to either $100,000 per person (if the defendant is a unit of local government or an emergency service organization) or $250,000 per person (if the defendant is the state government or a municipality). TEX. CIV. PRAC. & REM. CODE § 101.023. The court of appeals concluded that the higher ($250,000) cap applied. 644 S.W.3d at 377. But Curry did not plead that his claim was subject to the higher damages cap under Section 101.023. Nor does the record contain evidence that would support a determination that the higher cap applies. In other words, there is no evidence that Gulf Coast was "the state government" under Section 101.023(a)[7] or "a municipality" under Section 101.023(c). Curry therefore failed to affirmatively demonstrate that Gulf Coast's immunity from suit was waived beyond the $100,000 cap.

Moreover, the court of appeals erred when it held that determining which Section 101.023 cap applies was a question that should be submitted to the jury. The trial court, not the jury, should resolve jurisdictional issues, although it may consider evidence and

---

[7] The Tort Claims Act's definition of "state government" requires, among other things, that the governmental unit "has statewide jurisdiction." TEX. CIV. PRAC. & REM. CODE § 101.001(6)(B).

12

make factual findings when necessary to do so. *See Miranda*, 133 S.W.3d at 227; *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000). Based on the absence of any evidence to support a higher cap, the trial court was barred from rendering a judgment exceeding the $100,000 cap.

There is an independent reason the trial court erred in rendering judgment on the jury's $216,000 verdict—the uncontroverted evidence in the record establishes that Gulf Coast is a community center under Chapter 534 of the Health and Safety Code and, therefore, a unit of local government subject to Section 101.023(b)'s $100,000 cap. Section 534.001 of the Health and Safety Code authorizes counties to establish and operate a "community center" to provide mental health or intellectual disability services or both. TEX. HEALTH & SAFETY CODE § 534.001(a), (b). Under Section 534.001(c), a community center is "a unit of local government, as defined and specified by [the Tort Claims Act]." *Id.* § 534.001(c)(1). Thus, if the evidence establishes that Gulf Coast is a community center under Health and Safety Code Section 534.001, then Gulf Coast is also a unit of local government under Section 534.001(c) and the Tort Claims Act's $100,000 cap applies as a matter of law. *See City of Garland v. Dall. Morning News*, 22 S.W.3d 351, 357 (Tex. 2000) ("In general, matters of statutory construction are legal questions.").

Here, Gulf Coast's general counsel, Linda Bell, testified by affidavit that Gulf Coast "is a community center established by Brazoria and Galveston Counties" and is "a unit of local government under Tex. Health & Safety Code §534.001." Gulf Coast also submitted a business

13

records affidavit authenticating several of its formation documents, including (1) the contract whereby Galveston and Brazoria Counties agreed to establish Gulf Coast as a "Community Center for Mental Health and Mental Retardation Services" under the predecessor to Health and Safety Code Chapter 534 and (2) Gulf Coast's bylaws, which state that it was "established . . . pursuant to Chapter 534 of the *Texas Health and Safety Code*."

Curry does not dispute the validity or truthfulness of this evidence, nor did he offer any controverting evidence that might create a fact issue regarding Gulf Coast's status as a community center under Health and Safety Code Chapter 534.[8]  Instead, Curry argues that the trial court could not consider this evidence because it was not presented during the trial.  But determining which damages cap applies is a jurisdictional question, not an affirmative defense to be presented to the jury.  Where, as here, a plaintiff fails to establish the applicability of the higher cap, the trial court should not have declined to consider Gulf Coast's evidence demonstrating the applicability of the lower cap merely because it was not presented until after trial.  *See Miranda*, 133 S.W.3d at 227 (recognizing that, while a trial court ordinarily should determine its jurisdiction "as soon as practicable," situations exist where a

---

[8] Curry argues that Section 534.001 does not authorize a community center to perform public transportation services, so Gulf Coast was not performing a governmental function at the time of the accident.  But Section 534.001(c) contains no separate requirement that the community center's injury-causing activity be a governmental function for it to be a unit of local government.  *See* TEX. HEALTH & SAFETY CODE § 534.001(c).  Thus, the only relevant inquiry is whether Gulf Coast is a community center; if so, it is a unit of local government under the Tort Claims Act.

14

jurisdictional determination requires "a fuller development of the case" (citing *Bland*, 34 S.W.3d at 554)).  Indeed, there may be instances in which proof of either cap's applicability never becomes necessary because, for example, the jury returns a verdict below the lower cap.  In this case, the need to determine which cap applied only arose after the jury returned a verdict that exceeded the lower cap.  We conclude both that the evidence should have been considered by the trial court and that the evidence conclusively established that Gulf Coast was a community center and, therefore, a "unit of local government" subject to the $100,000 cap.  TEX. CIV. PRAC. & REM. CODE § 101.023(b); TEX. HEALTH & SAFETY CODE § 534.001(c)(1).

## IV.    Conclusion

The Tort Claims Act waives a governmental unit's immunity from suit only to the extent the Act waives its immunity from liability.  Courts therefore lack jurisdiction to render a judgment that exceeds the applicable damages cap under Section 101.023, and a plaintiff seeking recovery under the Tort Claims Act has the burden to prove which cap applies.  We reverse the judgments of the court of appeals and the trial court and remand to the trial court with instructions to recalculate the judgment to comply with the $100,000 cap in Section 101.023(b).

Rebeca A. Huddle
Justice

**OPINION DELIVERED:** December 30, 2022

15