

### KEN PAXTON
ATTORNEY GENERAL OF TEXAS

December 13, 2023

Ms. Gloria Meraz
Director and Librarian
Texas State Library & Archives Commission
Post Office Box 12927
Austin, Texas 78711-2927

     **Opinion No. KP-0452**

     Re: Scope of authority of the Texas State Library and Archives Commission to accept gifts under Government Code section 441.006(b)(2) (RQ-0001-JS)

Dear Ms. Meraz:

     You ask about the authority of the Texas State Library and Archives Commission ("TSLAC") to receive a donation which "would consist of repair and rehabilitation work on a historic house" owned by TSLAC.[1] You tell us TSLAC received the Cleveland-Partlow House ("Partlow House") as a gift in 1983. Request Letter at 2. You state the gift was conditioned on TSLAC "assuming responsibility for seeing that the home is restored, preserved, and maintained, provided that a tax-exempt organization or entity 'assumes the details of executing such responsibilities, and without the obligation to use State funds for such purposes unless such funds are contributed to the State therefor.'" *Id.* (quoting the deed giving the Partlow House to TSLAC). You inform us that "[t]he Partlow House is in need of a great deal of repair, ranging from ADA Accessibility issues to the restoration of interior rooms and repairs to the driveway." *Id.* You explain that TSLAC was recently approached about the possibility of a private individual or entity "providing funds directly to a third party to provide [repair and rehabilitation] services" for the Partlow House. *Id.* at 1. We understand your primary concern to be whether such an arrangement is a donation authorized under Government Code subsection 441.006(b)(2). *See id.* at 1 (asking whether section 441.006 authorizes TSLAC "to accept a donation of 'services' if those services are paid for by a third party"), 5.[2] If receipt of such a donation is authorized by subsection

---

[1]Letter from Ms. Gloria Meraz, Director & Libr., Tex. State Libr. & Archives Comm'n, to Honorable John Scott, Acting Tex. Att'y Gen. at 1 (June 28, 2023), https://texasattorneygeneral.gov/sites/default/files/request-files/request/2023/RQ0001JS.pdf ("Request Letter").

[2]As we understand the arrangement, TSLAC is the donee. *See* BLACK'S LAW DICTIONARY 596 (10th ed. 2014) (defining a "donee" as "[o]ne to whom a gift is made; the recipient of a gift"). The private individual or entity entering the arrangement with the third party—not the third party—is the donor. *See id.* (defining a "donor" as "[s]omeone who gives something without receiving consideration for the transfer"). The arrangement thus involves

(continued…)

441.006(b)(2), you also ask about the implementation and oversight of work done via such a donation. *Id.*

> **Government Code subsection 441.006(b)(2) authorizes TSLAC to receive donations on terms and conditions it considers proper as long as the State does not incur financial liability because of the donation.**

Government Code chapter 441 is titled "Libraries and Archives." TEX. GOV'T CODE §§ 441.001–.246. Subchapter A creates the seven-member TSLAC and grants it specified powers and duties. *See generally id.* §§ 441.001–.020. Your questions require us to construe Government Code subsection 441.006(b)(2), which provides that "[t]he commission may . . . receive a donation or gift of money, property, or services on any terms and conditions it considers proper as long as the state does not incur financial liability[.]" *Id.* § 441.006(b)(2).

When construing a statute, a court's primary objective is to determine the Legislature's intent which, when possible, is discerned from the plain meaning of the words chosen. *See Maxim Crane Works, L.P. v. Zurich Am. Ins. Co.*, 642 S.W.3d 551, 557 (Tex. 2022). "Words not statutorily defined bear their common, ordinary meaning unless a more precise definition is apparent from the statutory context or the plain meaning yields an absurd result." *Fort Worth Transp. Auth. v. Rodriguez*, 547 S.W.3d 830, 838 (Tex. 2018). In determining the term's plain and ordinary meaning, courts "typically look first to dictionary definitions." *Id.*

> **A court would likely conclude TSLAC's authority to receive a donation of "services" under subsection 441.006(b)(2) includes the authority to receive a donation of repair, rehabilitation, or construction work for a specific purpose, even if the donor pays a third party to perform the work.**

Your first question involves the scope of the term "services" under subsection 441.006(b)(2) and whether it is limited in a way that would prohibit TSLAC "from accepting a donation of repair, rehabilitation, or construction work for a specific purpose[.]" Request Letter at 1. As you recognize, the term "services" is not defined for purposes of subsection 441.006(b)(2). *Id.* at 2. The common meaning of the term "service" is "the action of helping or *doing work for someone*[.]" NEW OXFORD AMERICAN DICTIONARY 1596 (3d ed. 2010) (emphasis added); *see also Van Zandt v. Fort Worth Press*, 359 S.W.2d 893, 895 (Tex. 1962) (examining the ordinary meaning of "services"). Relying on the ordinary meaning of the term, a court would likely conclude TSLAC's authority to receive a donation of services encompasses the authority to receive a donation of repair, rehabilitation, or construction work.

---

an agreement between two private parties to exchange money for work, with the party that obtains the right to receive the work then "donating" said work to TSLAC. As a result, we do not understand the arrangement to constitute a donation of money to TSLAC.

You indicate this type of work-in-lieu-of-money donation is different from donations TSLAC has received in the past for work on the Partlow House. Request Letter at 4 (explaining that "[s]ince 2017, repairs to and rehabilitation of the Partlow House have been paid with funds donated by the Jean and Price Daniel Foundation and the Atascocita Historical Society" combined with general revenue funds appropriated to TSLAC).

It is not uncommon that a donor offers a donation or gift on the condition that it be used for a specific project or purpose. *See, e.g.*, Tex. Att'y Gen. Op. No. GA-1014 (2013) at 1 (considering whether a county may accept a monetary donation for maintenance of roads designated by the donor). By its terms, subsection 441.006(b)(2) grants TSLAC considerable discretionary authority to receive a donation of "services on *any terms and conditions* it considers proper . . . ." TEX. GOV'T CODE § 441.006(b)(2) (emphasis added); *see also* Tex. Att'y Gen. Op. No. GA-1056 (2014) at 3 (discussing the breadth of the term "any"). Thus, a court would likely conclude TSLAC may under that provision accept a donation for a specific purpose if TSLAC considers such a condition proper and the State does not incur financial liability as a result of the donation.

You are also concerned about whether a service donated to TSLAC could be performed by a third-party, rather than by the donor itself. Request Letter at 1, 5. Nothing in subsection 441.006(b)(2) requires the donor to perform the donated service or otherwise dictates the manner in which a donor must deliver a donated service. TEX. GOV'T CODE § 441.006(b)(2). Again, TSLAC may receive a donation of "services on any terms and conditions it considers proper . . . ." *Id.* If TSLAC considers such a term or condition proper and it does not result in financial liability for the State, a court would likely conclude subsection 441.006(b)(2) authorizes TSLAC to receive a donation of services where the donor pays a third-party to perform the service.

Your next set of questions concern whether implementing such a donation arrangement conforms to other statutory requirements and allows for sufficient oversight of the donation.[3] Request Letter at 1, 5. However, you do not describe the arrangement in detail. *Id.* at 1 (describing only generally a donation of "repair and rehabilitation work"). Moreover, your questions involve consideration of factual matters and are outside the purview of an Attorney General opinion. *See* Tex. Att'y Gen. Op. No. KP-0227 (2019) at 4 (explaining this office does not answer fact questions in the opinion process). Thus, we cannot advise you whether or how to arrange the type of donation transaction you describe so that it conforms to all other potential legal requirements and allows for sufficient oversight. That said, we can advise you generally about the specific statutory provisions you raise.

> **The role of the Texas Facilities Commission in relation to repair, rehabilitation, or construction work donated to TSLAC for the Partlow House depends on the resolution of fact questions.**

Assuming a donation of repair, rehabilitation, or construction work is a donation of services, your third question asks about the selection of the entity providing the services. Request Letter at 1, 5 (asking whether the donor may "select a vendor of their choosing to provide the services"). Your particular concern appears to be whether Government Code chapters 2165 or 2166 require the Texas Facilities Commission ("TFC") to select the third-party that provides any repair, rehabilitation, or construction work donated to TSLAC pursuant to subsection

---

[3]In part, these questions are contingent upon a conclusion that the donation constitutes a donation of money. *See* Request Letter at 5 (asking "[i]f a donation of services paid for by a third party is considered a donation of money, . . . would the commission be required to follow standard state procurement and contracting requirements"). We do not understand the arrangement to constitute a donation of money to TSLAC. *See supra* note 2. Thus, we do not reach all parts of these questions.

441.006(b)(2). *Id.* at 3. The role of the TFC under chapters 2165 or 2166 in relation to a donation for the Partlow House depends on the resolution of fact issues. As a result, we advise you about the application of those chapters only as a general matter, beginning with chapter 2166. *See* Tex. Att'y Gen. Op. No. KP-0227 (2019) at 4.

The TFC administers chapter 2166. TEX. GOV'T CODE § 2166.051. Chapter 2166 applies to, among other things, construction and reconstruction projects related to state buildings and addresses the selection of contractors for those projects. *See, e.g., id.* §§ 2166.002 (providing chapter 2166 "applies only to a building construction project of the state, the acquisition of real property for state purposes, and the disposition of real property owned by the state"), 2166.001(1-b) (defining "[c]onstruction" to include reconstruction), 2166.253 (providing for lowest and best bid for a project). Whether construction or reconstruction of a state building constitutes a "[p]roject" for purposes of chapter 2166 depends on the details of its financing. *Id.* § 2166.001(4)(B) (defining "project" to mean "a building construction project that is financed wholly or partly by a specific appropriation, a bond issue, or federal money" and including "the construction of . . . rehabilitation, or repair of, an existing building"). Further, some projects are excepted from chapter 2166.[4] *See, e.g., id.* § 2166.003(a)(7) (excepting "a repair and rehabilitation project involving the use of contract labor, if the project has been excluded from this chapter by commission rule and does not require the advance preparation of working plans or drawings"). To the extent work done on the Partlow House does not constitute a "project," a court would likely conclude it is not subject to the construction requirements of chapter 2166.[5]

With certain exceptions we assume do not apply here,[6] chapter 2165 gives the TFC "charge and control of all public buildings, grounds, and property[.]" *Id.* §§ 2165.001(a)(1), .002. It does not generally address the selection of contractors for rehabilitation, repair, or construction work on a state building. *But see id.* § 2165.051(b) (relating to the State Preservation Board). It does, however, require the TFC to provide "facilities management services" for certain state agency facilities. *Id.* § 2165.007. The term "facilities management services" includes construction

---

[4]You suggest that some of those exceptions may apply to a donation to the Partlow House. Request Letter at 4 (highlighting the following exceptions: "a repair or rehabilitation project, except a major renovation, of buildings and grounds on TFC's inventory" and "a repair and rehabilitation project requiring the use of contract labor, if the project has been excluded from this chapter by TFC rule and does not require the advance preparation of working plans or drawings").

[5]A TFC rule acknowledges that certain types of repair and rehabilitation projects are not subject to its construction administration or are otherwise excluded from its jurisdiction and provides that "[a]pplications for a determination that a project is excluded shall be provided to the Commission in writing on or before June 1 of each fiscal year." 1 TEX. ADMIN. CODE § 123.26(a), (b) (2011) (Tex. Facilities Comm'n, Exclusions from Commission Authority).

[6]Specifically, section 2165.001's provisions "relating to charge and control of public buildings and grounds do not apply to" an institution of higher education, a state agency to which control has been committed by law, and a state agency to which the TFC has delegated that authority. TEX. GOV'T CODE § 2165.002. We find no state law that commits charge and control of the Partlow House to TSLAC and we are not aware that TFC has delegated charge and control of the Partlow House to TSLAC. Moreover, you tell us those exceptions do not apply to TSLAC. *See* Request Letter at 3 (stating the broad exceptions to the TFC's "charge and control" are not applicable to TSLAC). Thus, we assume the exceptions do not apply to the Partlow House.

services.[7] *Id.* § 2165.007(a). The state agency facilities for which TFC *must* provide these services are limited to those located in Travis County or counties adjacent to Travis County. *Id.* § 2165.007(b) (providing the TFC's duty to provide facilities management services). You tell us the Partlow House is in Liberty County, which is not adjacent to Travis County. Therefore, the TFC is not required by subsection 2165.007(b) to provide facilities management services in relation to the Partlow House. The TFC may also provide facilities management services to a state agency requesting such services. *Id.* § 2165.056(a) (providing the TFC "may, at a state agency's request, exercise the powers and duties given to the commission by" subchapter B with respect to any property owned by the State). To the extent TSLAC requests such services, TFC may provide facilities management services (including construction services) in relation to the Partlow House.[8]

Chapter 2165 also provides that TFC "shall provide for and direct the repair or improvement" of a state building or office if the head of a department or office brings it to TFC's attention. *Id.* § 2165.052. To the extent TSLAC directs TFC's attention to the needed repair or improvement of the Partlow House, TFC must provide for and direct those repairs or improvements.

In sum, TFC's role under chapters 2166 or 2165 in relation to repair, rehabilitation, or construction work donated to TSLAC for the Partlow House depends on the resolution of fact questions and is beyond the legal advice offered by an Attorney General opinion.

**A contract between TSLAC and a private donor is a means by which TSLAC could retain oversight of a donation of repair, rehabilitation, or construction work.**

If TSLAC may accept the type of donation at issue here, your final question asks whether TSLAC would "retain oversight authority over the" repair, rehabilitation, or construction work. Request Letter at 1. You do not specify the type or extent of the oversight. *Id.* at 1–5. We note that TSLAC has adopted a rule that governs its relationship with a private donor. *See* 13 TEX. ADMIN. CODE § 2.61(a) (2015) (Tex. State Libr. & Archives Comm'n, Private Donors). The rule expressly provides that TSLAC may execute an agreement with a private donor to document any terms or conditions relating to the donation. *Id.* § 2.61(e). As a practical matter, such an agreement is a means by which TSLAC could retain oversight of a donation of repair, rehabilitation, or construction work.

---

[7]By rule, the TFC prohibits an occupying agency from performing or contracting for a facilities management service within a TFC "managed facility without prior written approval of the Commission." 1 TEX. ADMIN. CODE § 116.4(a) (2010) (Tex. Facilities Comm'n, Procedures Governing Maintenance Service and Minor Construction Contracts); *see also id.* § 116.1(1) (2010) (Tex. Facilities Comm'n, Definitions) (defining the term "[f]acility" to include a building under the inventory of the TFC).

[8]You state that past work on the Partlow House was completed in coordination with the TFC, but you do not specify how the coordination arose. Request Letter at 4.

**S U M M A R Y**

Government Code subsection 441.006(b)(2) authorizes the Texas State Library and Archives Commission (TSLAC) to receive a donation of money or services on terms and conditions it considers proper as long as the State does not incur financial liability as a result of the donation. A court would likely conclude TSLAC's authority to receive a donation of "services" under subsection 441.006(b)(2) includes the authority to receive a donation of repair, rehabilitation, or construction work for a specific purpose, even if the donor pays a third party to perform the work.

The role of the Texas Facilities Commission in relation to repair, rehabilitation, or construction work donated to TSLAC for the Cleveland-Partlow House depends on the resolution of fact questions.

A contract between TSLAC and a private donor is a means by which TSLAC could retain oversight of a donation of repair, rehabilitation, or construction work.

Very truly yours,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

LESLEY FRENCH
Chief of Staff

D. FORREST BRUMBAUGH
Deputy Attorney General for Legal Counsel

AUSTIN KINGHORN
Chair, Opinion Committee

CHRISTY DRAKE-ADAMS
Assistant Attorney General, Opinion Committee