**Reversed, Remanded, and Opinion Filed June 24, 2024**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-23-00067-CV

### GDS TRANSPORT, LLC, Appellant
### V.
### MV TRANSPORTATION, INC., Appellee

**On Appeal from the 101st Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-21-07545**

## MEMORANDUM OPINION

Before Justices Partida-Kipness, Pedersen, III, and Garcia
Opinion by Justice Partida-Kipness

In this interlocutory appeal, appellant GDS Transport, LLC (GDS) seeks reversal of the trial court's September 9, 2022 order granting appellee MV Transportation, Inc.'s (MV Transportation) Rule 91a motion to dismiss. We reverse the portions of the order dismissing GDS's claims against MV Transportation for breach of contract and fraud and remand for further proceedings consistent with this opinion.

## BACKGROUND

The Dallas Area Rapid Transit Authority (DART) is a regional transit agency servicing thirteen cities in North Texas. To comply with the Americans with Disabilities Act (ADA), DART contracts for ADA-compliant paratransit services, microtransit, shuttle services, and subsidized transportation programs.[1] In June of 2018, DART issued a Request for Information (RFI) to begin the process of choosing a company to implement and manage its mobility management services. The RFI provided for "a new service model," under which DART would contract with one prime contractor to perform all mobility management services. The prime contractor would be responsible for engaging the services of subcontractor/providers.

In March 2019, DART awarded MV Transportation the contract for Mobility Management Transportation Services (the Master Agreement). GDS was referenced in the Master Agreement as a prospective subcontractor/provider to provide buses and drivers for DART's paratransit and microtransit bus service. On April 19, 2019, MV Contract Transportation, Inc. (MV Contract) and GDS entered the Subcontract for Transportation Services (the Subcontract) for GDS to provide ADA-compliant paratransit and microtransit services for DART. MV Contract is a subsidiary of MV Transportation. According to GDS, the paratransit business model that was the originating basis for the Master Agreement called for dispatching taxis, traditional

---

[1] ADA Paratransit is an origin-to-destination service in compliance with the ADA. DART Microtransit is a shared ride, demand-responsive service designed for the general public within specified zones within the service area, as designated by DART.

sedans, or wheelchair-equipped shuttle buses to transport a DART paratransit client. GDS was the provider of the bus service.

Under the Subcontract, GDS would provide the DART paratransit and microtransit bus service and be compensated by MV Contract based upon a pricing schedule in the Subcontract. Before entering the Subcontract, GDS met and exchanged emails with officials from DART, MV Transportation, and MV Contract concerning GDS's capabilities to provide the requested services and pricing for those services. GDS contends MV Transportation and DART made representations that the new paratransit model would increase profitability for GDS and efficiencies for the public. Under the new model, GDS would be paid on a per-trip basis rather than an hourly basis. GDS was also told MV Transportation and DART would utilize RouteMatch software, a new software program, which would create efficiencies to allow GDS's business to be profitable with the per-trip compensation model. GDS contends it agreed to the Subcontract's pricing schedule and invested over $3,400,000 in a new fleet of buses and vans in reliance on those representations and the Subcontract. On June 15, 2019, GDS entered a bus lease for a nominal amount with MV Transportation (the Vehicle Lease) so GDS could begin operations before the arrival of its new bus fleet. The Vehicle Lease is the subject of GDS's breach of contract claim against MV Transportation.

GDS contends the promise of a profitable endeavor did not materialize. The number of trips directed to GDS was much less than the number set out in the

Subcontract and pricing schedule. This was exacerbated when implementation of RouteMatch failed and the parties reverted to older software that was not compliant with the Master Agreement's software requirements. In November and December 2019, GDS informed MV Transportation and MV Contract that the number of trips set forth in the Subcontract had not materialized and requested they revise the payment schedule. GDS maintains they were unresponsive to its requests and financial predicament. According to GDS, it was put out of business by the misrepresentations regarding the number of trips, the failed implementation of RouteMatch, and the debt incurred to purchase buses and hire drivers. In May 2020, GDS filed for bankruptcy.

## PROCEDURAL HISTORY

The bankruptcy trustee filed an adversary proceeding against MV Contract. However, because the Subcontract contained an arbitration clause, the parties chose an arbitrator and began that process. Six months into the arbitration, MV Contract filed the underlying suit for declaratory judgment. Both sides waived arbitration and agreed to try all issues between them in the underlying state court proceeding.

In the trial court, GDS filed a counterpetition against MV Contract and later added MV Transportation and DART as third party defendants. GDS's Original Third-Party Petition and First Amended Original Counter-Petition (the Amended Counter Petition) is GDS's live pleading at issue on appeal.

MV Transportation, MV Contract, and DART moved to dismiss the Amended Counter Petition. The movants called the joint motion a "Motion to Dismiss for Lack of Jurisdiction and for Failure to State a Claim" (the Rule 91a Motion) and sought dismissal of GDS's claims against them pursuant to Rules 85 and 91a of the Texas Rules of Civil Procedure.[2] In the Rule 91a Motion, the movants argued governmental immunity barred the trial court from exercising subject matter jurisdiction over the Amended Counter Petition, and contended in the alternative that GDS's claims were barred as a matter of law by various affirmative defenses. GDS responded to and moved to strike the Rule 91a Motion.

Following a hearing, the trial granted in part and denied in part the Rule 91a Motion and did not state the court's grounds for the ruling. The order disposed of all claims by GDS against DART and MV Transport and GDS's tort claims against MV Contract. GDS's breach of contract claim against MV Contract was not dismissed; however, the trial court ruled any damages for that claim were limited to the damages permitted by section 271.153 of the Texas Local Government Code. The parties agreed to sever and abate the remaining claims between MV Contract and GDS. On December 22, 2022, the trial court signed a severance order and this appeal followed. On appeal, GDS challenges only the dismissal of its breach of contract and fraud claims against MV Transportation.

---

[2] Rule 85 addresses the acceptable contents of an original answer. TEX. R. CIV. P. 85. Rule 91a addresses motions to dismiss a cause of action on the grounds that it has no basis in law or fact. TEX. R. CIV. P. 91A.

## STANDARD OF REVIEW

A party "may move to dismiss a cause of action on the grounds that it has no basis in law or fact." TEX. R. CIV. P. 91a.1. "A cause of action has no basis in fact if no reasonable person could believe the facts pleaded." *Id.* "A cause of action has no basis in law if the allegations, taken as true, together with inferences reasonably drawn from them, do not entitle the claimant to the relief sought." *Id.* In ruling on a Rule 91a motion, a court "may not consider evidence . . . and must decide the motion based solely on the pleading of the cause of action." TEX. R. CIV. P. 91a.6. We review the merits of a Rule 91a motion de novo. *Bethel v. Quilling, Selander, Lownds, Winslett & Moser, P.C.*, 595 S.W.3d 651, 654 (Tex. 2020) (citing *City of Dallas v. Sanchez*, 494 S.W.3d 722, 724 (Tex. 2016) (per curiam)). Whether a defendant is entitled to dismissal under the facts alleged is a legal question. *In re Farmers Tex. Cnty. Mut. Ins. Co.*, 621 S.W.3d 261, 266 (Tex. 2021) (orig. proceeding).

Because rule 91a provides a harsh remedy, we strictly construe the rule's requirements. *Bedford Internet Off. Space, LLC v. Tex. Ins. Grp., Inc.*, 537 S.W.3d 717, 720 (Tex. App.—Fort Worth 2017, pet. dism'd); *see also Renate Nixdorf GmbH & Co. KG v. TRA Midland Props., LLC*, No. 05-17-00577-CV, 2019 WL 92038, at *10 (Tex. App.—Dallas Jan. 3, 2019, pet. denied) (mem. op.). The rule is not a substitute for special exception practice under rule 91 or summary judgment practice under rule 166a, "both of which come with protective features against precipitate summary dispositions on the merits." *Long v. Long*, 681 S.W.3d 805, 816 (Tex.

App.—Dallas 2023, no pet.); *Davis v. Homeowners of Am. Ins. Co.*, No. 05-21-00092-CV, 2023 WL 3735115, at *2 (Tex. App.—Dallas May 31, 2023, no pet.) (mem. op.); *Royale v. Knightvest Mgmt., LLC*, No. 05-18-00908-CV, 2019 WL 4126600, at *4 (Tex. App.—Dallas Aug. 30, 2019, no pet.) (mem. op.).

When an order granting a rule 91a motion to dismiss does not specify the grounds for dismissal, an appellant seeking reversal of a rule 91a dismissal must negate the validity of each ground on which the trial court could have relied in granting the dismissal. *Lopez v. Sunstate Equip. Co. LLC*, No. 05-21-00100-CV, 2022 WL 3714496, at *5 (Tex. App.—Dallas Aug. 29, 2022, pet. abated) (mem. op.); *Buholtz v. Gibbs*, No. 05-18-00957-CV, 2019 WL 3940973, at *3 (Tex. App.—Dallas Aug. 21, 2019, pet. denied) (mem. op.).

## ANALYSIS

In two appellate issues, GDS challenges the order dismissing its breach of contract and fraud claims against MV Transportation. First, GDS maintains the trial court erroneously looked beyond the pleadings to grant the Rule 91a motion. Second, GDS argues MV Transportation was not entitled to derivative governmental immunity as a matter of law and, alternatively, fact issues remain precluding a determination of immunity. Put more simply, GDS contends MV Transportation failed to establish the breach of contract and fraud claims had no basis in law or fact. We agree.

## I.    The causes of action have a basis in fact.

A cause of action has no basis in fact "if no reasonable person could believe the facts pleaded." TEX. R. CIV. P. 91a.1. This prong of rule 91a relates to the believability of the facts alleged by a plaintiff in pleading a cause of action and, thus, "seldom rises to a point of contention in the case law." *Davis*, 2023 WL 3735115, at *2. The "no basis in fact" prong is a "factual-plausibility standard." *Sanchez*, 494 S.W.3d at 724. As such, we do not consider whether the allegations "are likely, or even if the conduct alleged is outlandish, but only if a reasonable person could believe the alleged conduct." *Longhorn Creek Ltd. v. Gardens of Connemara Ltd.*, 686 S.W.3d 418, 425 (Tex. App.—Dallas 2024, pet. filed) (quoting *Drake v. Walker*, No. 05-14-00355-CV, 2015 WL 2160565, at *3 (Tex. App.—Dallas May 8, 2015, no pet.) (mem. op.)).

Moreover, a court may not consider evidence and must decide the Rule 91a motion based solely on the pleading of the cause of action, together with any pleading exhibits permitted by rule 59.[3] *Davis*, 2023 WL 3735115, at *5 (first citing TEX. R. CIV. P. 91a.6; and then citing *Bethel*, 595 S.W.3d 651 at 656 (noting rule 91a.6 expressly limits a court's consideration to the pleading of the cause of action with a "narrow class of exhibits" and stating "[r]ule 91a limits the scope of a court's factual, but not legal, inquiry.")). Whereas a movant like MV Transportation may

---

[3] Rule 59 permits as "pleading exhibits" only "[n]otes, accounts, bonds, mortgages, records, and all other written instruments, constituting, in whole or in part, the claim sued on, or the matter set up in defense." TEX. R. CIV. P. 59. This is a narrow category of documents. *Bethel*, 595 S.W.3d at 654.

raise an affirmative defense as the basis for its argument that the non-movant's claims should be dismissed because they have no basis in law, "the factual inquiry that follows is restricted to reviewing the non-movant's pleading and any rule 59 exhibits that may be attached to and incorporated therein." *Davis*, 2023 WL 3735115, at *5.

Applying these standards, we conclude GDS's claims have a basis in fact. In reviewing the allegations in the Amended Counter Petition, we cannot say that no reasonable person could believe the facts pleaded by GDS. "Under Rule 91a, this ends the inquiry, as we are not at liberty to assess the ultimate evidentiary vitality of" GDS's claims. *See Royale*, No. 2019 WL 4126600, at *7. Thus, to the extent the trial court granted the motion to dismiss on this basis, either with or without consideration of MV Transportation's evidence, it was error. *See Longhorn Creek Ltd.*, 686 S.W.3d at 427–28. We sustain GDS's first issue.

## II. The causes of action have a basis in law.

Next we consider whether the trial court erred in dismissing the causes of action because they lack a basis in law. Typically, there are two circumstances in which a court may determine that a cause of action has no basis in law under rule 91a: (1) where the plaintiff fails to plead a legally cognizable cause of action, or (2) where the allegations in the plaintiff's own pleading establish a complete legal bar to the plaintiff's claims by affirmatively negating entitlement to the relief requested. *Long*, 681 S.W.3d at 817–18; *Reaves v. City of Corpus Christi*, 518 S.W.3d 594, 608

–9–

(Tex. App.—Corpus Christi–Edinburg 2017, no pet.). Further, "[a] cause of action has no basis in law under Rule 91a if it is barred by an established legal rule and the plaintiff has failed to plead facts demonstrating that the rule does not apply." *In re First Rsrv. Mgmt., L.P.*, 671 S.W.3d 653, 661 (Tex. 2023) (orig. proceeding); *Longhorn Creek Ltd.*, 686 S.W.3d at 426.

Here, MV Transportation argued the breach of contract claim was properly dismissed because the Vehicle Lease bars GDS from recovering damages for maintenance costs. As for the fraud claim, MV Transportation contends it has complete immunity from intentional tort liability because it enjoys derivative immunity through DART.

### A.    Breach of the Vehicle Lease

GDS alleged in the Amended Counter Petition that MV Transportation breached the Vehicle Lease by wrongfully instructing MV Contract to deduct $48,968.05 in alleged maintenance costs from the money MV Contract owed GDS under the Subcontract. As it did in the trial court, MV Transportation contends on appeal that GDS failed to state a valid claim for breach of contract because the damages GDS sought are prohibited under the Vehicle Lease. MV Transportation relies on articles 1.8 and 2.2 of the Vehicle Lease to support its arguments, which provide:

> 1.8 <u>Maintenance</u>. Lessee shall, at its sole cost and expense, keep and maintain the Vehicles in good operating condition and working order (including repair/replacement of major components), and in compliance with all applicable regulations. Lessee shall maintain the

–10–

Vehicles in strict accordance with all manufacturer/supplier manuals and instructions as well as the requirements set forth on Exhibit B, and shall not cause or permit any manufacturer's warranty to become void for any reason. All maintenance vendors providing service on the Vehicles shall be approved by Lessor. All repair parts used for repairs to the Vehicles must be OEM or equivalent. Lessor shall have the right to inspect the Vehicles and all maintenance records to ensure Lessee's compliance with these requirements. Lessee shall reimburse Lessor for any damage or component failure resulting from Lessee's failure to adhere to the maintenance requirements of this Agreement.

. . . .

2.2 <u>Limitation on Liability</u>. **LESSEE AGREES THAT UNDER NO CIRCUMSTANCES SHALL LESSOR HAVE ANY LIABILITY WHATSOEVER (INCLUDING DIRECT, INCIDENTAL, SPECIAL, OR CONSEQUENTIAL DAMAGES, OR LOSS OF PROFITS 0R REVENUE) FOR COSTS, DAMAGES, OR EXPENSES ARISING OUT OF OR RELATED TO THE LESSEE'S POSSESSION, USE, OPERATION, OR STORAGE OF THE VEHICLES OR ANY PART THEREOF, EVEN IF LESSOR HAS BEEN ADVISED 0F THE POSSIBILITY OF SUCH LOSS OR DAMAGE.**

According to MV Transportation, the damages sought by GDS (i.e., $48,968.05 in alleged maintenance costs) are expressly prohibited under section 2.2 because they are damages "arising out of or related to [GDS's] possession, use, operation, or storage of the vehicles. . ." According to the Amended Counter Petition, however, the damages sought are not maintenance costs. Rather, they are the amount of an offset improperly taken from amounts owed to GDS under the Subcontract. GDS affirmatively pleaded that it provided all necessary maintenance on the buses, stating "the vehicles did not require any maintenance beyond what GDS provided." Although section 1.8 required GDS to reimburse MV Transportation for "any

damage or component failure resulting from" GDS's failure to maintain the vehicles, GDS pleaded that it operated the vehicles for only two weeks and returned the vehicles "in the same or better condition upon return to Transport as at the time GDS took possession of the vehicles. . ." GDS asserted the offset was comprised of "alleged" maintenance costs. In other words, GDS alleged the offset was improperly categorized as maintenance costs by MV Transportation to benefit MV Contract.

GDS also pleaded the Vehicle Lease did not give MV Transportation the right to offset alleged maintenance costs. Citing Article 3.3 of the Vehicle Lease, GDS argued the Vehicle Lease allowed MV Transportation to make deductions "for any amounts owed by [Transport] to [GDS] hereunder or under the Subcontract." GDS then asserted Article 3.3 did not apply and did not permit the offset because MV Transportation was not a party the Subcontract and, as such, did not owe GDS any amount under the Subcontract:

> Despite these contractual issues, [MV Transportation] instructed its sister company, MV Contract, to deduct the alleged maintenance costs from money it owed to GDS under [the Subcontract].

GDS also pleaded MV Transportation breached the Vehicle Lease by failing to make a written demand under article 3.1(c). According to GDS, this alone constituted a breach by MV Transportation.

In the Rule 91a Motion, MV Transportation did not address GDS's arguments regarding articles 3.1 and 3.3. Instead, it relied solely on article 1.8 and 2.2, and attached an incomplete copy of the Vehicle Lease in support of the motion. The

portions of the Vehicle Lease attached as an exhibit did not include articles 3.1 or 3.3.

Taking GDS's allegations as true as required by Rule 91a, and applying the plain language of the Vehicle Lease, we conclude GDS's breach of contract claim against MV Transportation has a basis in law. Under this record, the trial court erred by dismissing that cause of action pursuant to Rule 91a.

## B.  Derivative immunity for fraud claim

MV Transportation contends it established an immunity defense as to fraud as a matter of law. According to MV Transportation, it "is entitled to immunity from suit and immunity from liability because [MV Transportation and MV Contract] were performing governmental functions in furtherance of DART's public transportation system, and GDS's claims relate to conduct that is attributable to a governmental unit."

"Immunity is a proper basis of a Rule 91a motion to dismiss." *Livingston v. Erlandson*, No. 07-22-00315-CV, 2023 WL 3125368, at *1 (Tex. App.—Amarillo Apr. 27, 2023, no pet.) (mem. op.) (citing *Bethel*, 595 S.W.3d at 654 (holding that an affirmative defense, such as attorney immunity, can be the basis of a Rule 91a motion))). To determine whether dismissal under Rule 91a is required where the trial court's subject-matter jurisdiction is challenged, we consider "whether the pleadings, liberally construed, allege sufficient facts to invoke a waiver" of immunity under the Tort Claims Act. *Sanchez,* 494 S.W.3d at 725. This is analogous

to our review of an order granting a plea to the jurisdiction. *Id.*; *see also Thoele v. Tex. Dep't of Crim. Just.*, No. 10-18-00249-CV, 2020 WL 7687864, at *3 (Tex. App.—Waco Dec. 22, 2020, no pet.) (mem. op.) (citing *Sanchez*).

Here, GDS pleaded that MV Transportation does not enjoy derivative governmental immunity for tort claims through DART because MV Transportation took complete control over the paratransit operation from DART. In the Rule 91a motion, however, MV Transportation argued DART's immunity protections extended to MV Transportation because MV Transportation performs governmental functions for DART:

> Moreover, because MV Transport and MV Contract manage and facilitate the operation of DART's public transportation system—an undeniable governmental function—the immunity protections afforded to DART also extend to MV Transport and MV Contract. *See* TEX. TRANSP. CODE § 452.056(a)(3); *see also Rodriguez*, 547 S.W.3d at 841–42 (holding that section 452.056 "limit[s] the liability of private contractors when they perform a function of an authority under chapter 452").

> . . . .

> Thus, when a transportation authority like DART engages independent private contractors such as MV Transport and MV Contract, the independent contractors are cloaked with the same governmental immunity protections granted to the transportation authority. *Rodriguez*, 547 S.W.3d at 846 (citing TEX. TRANSP. CODE § 452.056(d)) ("Transportation Code section 452.056 creates a limited exception to the general rule that an independent contractor is not a public entity for any purpose—that is, for the purpose of liability, an independent contractor performing a function of an authority under chapter 452 should be treated as if it were the governmental unit performing that function."). Because DART engaged MV Transport and MV Contract to facilitate transportation services on DART's behalf, Texas law requires that MV Transport and MV Contract be

treated as DART for purposes of governmental immunity. *See Rodriguez*, 547 S.W.3d at 847 (stating that "for the purpose of liability, an independent contractor performing an essential governmental function under Transportation Code chapter 452 shall be treated as the government").

Neither the transportation code nor the *Rodriguez* opinion extends DART's immunity to MV Transportation here.

Section 452.056(d) provides:

> (d) A private operator who contracts with an authority under this chapter is not a public entity for purposes of any law of this state except that an independent contractor of the authority that, on or after June 14, 1989, performs a function of the authority or an entity described by Section 452.0561 that is created to provide transportation services is liable for damages only to the extent that the authority or entity would be liable if the authority or entity itself were performing the function and only for a cause of action that accrues on or after that date.

TEX. TRANSP. CODE § 452.056(d). Contrary to MV Transportation's arguments, the *Rodriguez* court did not hold that section 452.056(d) extended governmental immunity to private contractors. *Fort Worth Transportation Authority v. Rodriguez*, 547 S.W.3d 830 (Tex. 2018). Rather, the *Rodriguez* court did the opposite, concluding that "section 452.056 does not amount to a legislative grant or extension of immunity to private contractors." *Id.* at 842–43. "Based on the plain language of section 452.056, we conclude that the statute does not extend immunity to private contractors, but instead limits the liability of private contractors performing an essential governmental function under chapter 452." *Id.* at 844. The court explained that section 452.056 merely limits the liability of a private contractor that performs a function of an authority under chapter 452:

–15–

> While the statute does use the singular "a private operator" performing "a function," this language designates who is entitled to the statute's protection. . . . The subsequent language then describes what protection those private contractors are afforded. The plain language of the statute defines the bounds of the limit on liability—an independent contractor that is subject to section 452.056(d) is liable for damages "only to the extent that the authority or entity would be liable if the authority or entity itself were performing the function."

*Id.* at 843. The court further noted that the liability limit imposed was "buttressed by the Legislature's designation of chapter 452 functions as 'essential governmental functions' that are 'matter[s] of public necessity.' " *Id.* at 842–43.

In *Rodriguez*, the parties did not dispute that the parties performed the functions of an authority and were entitled to section 452.056's limit on liability. *Id.* at 843. Under those facts, the court considered the extent to which the transportation authority would be liable if it were performing the functions the contractors performed and concluded the authority's liability was subject to a damages cap under section 101.023 of the civil practice and remedies code. *Id.* Because the contractors performed essential government functions providing the services necessary for operation of the bus transportation system, they were subject to the same liability limits as the authority would have had it performed the same functions. *Id.* at 844–45. They did not, however, enjoy governmental immunity from suit or liability. *Id.* To the extent the trial court concluded MV Transportation was entitled to derivative immunity under section 452.056(d) or *Rodriguez*, the trial court erred and the dismissal of GDS's fraud claims should be reversed.

The trial court also erred to the extent it concluded MV Transportation was entitled to derivative immunity under the common law. An independent contractor who has total control over how it performs the job for a governmental immunity is not entitled to derivative immunity. *Brown & Gay Eng'g, Inc. v. Olivares*, 461 S.W.3d 117, 125–26 (Tex. 2015). GDS argues MV Transportation contracted for complete control over the paratransit services and, therefore, does not enjoy derivative governmental immunity. GDS pleaded facts of that complete control, and MV Transportation denied those facts. As such, the right to control necessary to extend DART's immunity to MV Transportation "is utterly absent" from GDS's pleadings. *See id.* at 126. Under the Rule 91a standard, GDS's pleadings prevented dismissal based on a finding of derivative immunity as a matter of law. At a minimum, the parties' pleadings created a fact issue concerning whether MV Transportation had derivative immunity and did not permit dismissal as a matter of law. *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 227–28 (Tex. 2004) (if the evidence creates a fact issue regarding the jurisdictional issues, the trial judge should not grant the plea to the jurisdiction); *see also Dallas Area Rapid Transit v. Thomas*, 168 S.W.3d 322, 325 (Tex. App.—Dallas 2005, pet. denied) (same).

Moreover, GDS's fraud claim against MV Transportation is based on independent actions taken by MV Transportation and not attributed to actions taken by DART through MV Transportation. As the court explained in *Brown & Gay*, a

contractor does not enjoy governmental immunity where, as here, "the alleged cause of the injury was not the independent action of the contractor, but the action taken by the government through the contractor." See 461 S.W.3d at 125–26. Here, GDS alleged in the Amended Counter Petition that MV Transportation committed fraud through its own actions and misrepresentations. Assuming the truth of those allegations as we must, GDS's pleadings provide a legal basis for denying MV Transportation common law governmental immunity. The trial court erred by concluding otherwise. We sustain GDS's second issue.

## III. Rule 91a Attorney's Fees

In a footnote, GDS asks this Court to order the trial court to award GDS attorney's fees if we reverse the order granting the Rule 91a motion. Rule 91a.7 gives the trial court discretion to award cost and fees to the prevailing party on a 91a motion:

> Except in an action by or against a governmental entity or a public official acting in his or her official capacity or under color of law, the court *may award* the prevailing party on the motion all costs and reasonable and necessary attorney fees incurred with respect to the challenged cause of action in the trial court. Any award of costs or fees must be based on evidence.

TEX. R. CIV. P. 91a.7 (emphasis added). On remand, GDS may seek attorney's fees pursuant to Rule 91a.7 as the prevailing party. Whether to award those fees, however, is within the trial court's discretion. We, therefore, overrule GDS's request that we order the trial court to award GDS its fees at this time.

## CONCLUSION

GDS's pleadings against MV Transportation for breach of contract and fraud have a basis in law and fact. We, therefore, conclude the trial court erred by granting MV Transportation's Rule 91a Motion as to those claims. Accordingly, we reverse and vacate the portions of the trial court's September 9, 2022 order dismissing GDS's breach of contract and fraud claims against MV Transportation. We remand for further proceedings consistent with this opinion.

/Robbie Partida-Kipness/
ROBBIE PARTIDA-KIPNESS
JUSTICE

230067F.P05



# Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

GDS TRANSPORT, LLC, Appellant

No. 05-23-00067-CV        V.

MV TRANSPORTATION, INC.,
Appellee

On Appeal from the 101st Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DC-21-07545.
Opinion delivered by Justice Partida-
Kipness. Justices Pedersen, III and
Garcia participating.

In accordance with this Court's opinion of this date, the portions of the trial court's September 9, 2022 order dismissing GDS Transport, LLC's breach of contract and fraud claims against MV Transportation, Inc. is **REVERSED** and this cause is **REMANDED** to the trial court for further proceedings consistent with this opinion..

It is **ORDERED** that appellant GDS TRANSPORT, LLC recover its costs of this appeal from appellee MV TRANSPORTATION, INC.

Judgment entered this 24th day of June 2024.