
August 8, 2024

The Honorable Brian Birdwell
Chair, Senate Committee on Natural Resources & Economic Development
Texas State Senate
Post Office Box 12068
Austin, Texas 78711-2068

**Opinion No. KP-0473**

Re: Calculation of "average land value" under Local Government Code section 212.209 (RQ-0535-KP)

Dear Senator Birdwell:

You inquire about the method by which an appraisal district must calculate "average land value" pursuant to Local Government Code subsection 212.209(c).[1] You inform us that a discrepancy has arisen about how the calculation should be performed. Request Letter at 2. Specifically, you relay a concern from the provision's author, Representative Cody Harris, "that the differing methods produce widely different [average land] values." *Id.* You also attach correspondence between Representative Harris and the Travis County Appraisal District ("TCAD") memorializing their disagreement. *Id.* at 3–5. While we cannot resolve the dispute between Representative Harris and TCAD, we will generally address how a court would likely construe Local Government Code subsection 212.209(c). We begin by reviewing the recently enacted statutory framework in which subsection 212.209(c) is situated.

**Local Government Code chapter 212, subchapter H, establishes parameters for multifamily, hotel, and motel parkland dedication in certain large municipalities.**

Local Government Code subsection 212.209(c) is found in subchapter H of Local Government Code chapter 212. *See generally* TEX. LOC. GOV'T CODE §§ 212.201–.213. This subchapter, including the provision about which you ask, was enacted by House Bill 1526 in the Eighty-eighth regular legislative session.[2] You state that this legislation was intended "to codify and put guardrails on a common practice, known as parkland dedication, [that] several cities

---

[1]*See* Letter from Honorable Brian Birdwell, Chair, Senate Comm. on Nat. Res. & Econ. Dev., to Honorable Ken Paxton, Tex. Att'y Gen. at 1 (Mar. 5, 2024), https://www.texasattorneygeneral.gov/sites/default/files/request-files/request/2024/RQ0535KP.pdf ("Request Letter").

[2]Act of May 21, 2023, 88th Leg., R.S., ch. 493, § 1, 2023 Tex. Gen. Laws 1165, 1166–67 (codified at TEX. LOC. GOV'T CODE §§ 212.201–.213) ("House Bill 1526").

impose on new multifamily developments." Request Letter at 1. Toward that end, subchapter H establishes a framework under which a municipality subject to its application[3] "may require a landowner to dedicate a portion of the landowner's property for parkland use, impose a parkland dedication fee, or both require the dedication and impose the fee . . . ." TEX. LOC. GOV'T CODE § 212.205(a).

A parkland dedication fee is "a fee imposed by a municipality on a landowner for the acquisition, development, repair, and maintenance of parkland." *Id.* § 212.201(9). As you note, the calculation of average land value "plays an important role in the final calculation of the [parkland dedication] fees that may be imposed in-lieu [of] or in combination with a parkland dedication." Request Letter at 1; *see also* TEX. LOC. GOV'T CODE § 212.210(b)(2) (requiring as one step in the calculation of such a fee that the sum arrived at under subsection 212.210(b)(1) be multiplied "by the average land value for the area in which the land is located"). Local Government Code sections 212.209, 212.210, and 212.211[4] generally address how such fees are calculated.

Your request broadly implicates sections 212.209 and 212.210. Determining parkland dedication fees begins with section 212.209. The first step is for the governing board of the relevant municipality to "designate all territory within its municipal boundaries as a suburban area, urban area, or central business district area." TEX. LOC. GOV'T CODE § 212.209(a). The municipality then must "notify each appraisal district in which the municipality is wholly or partly located of the designation." *Id.* § 212.209(b). Following notification, the provision about which you ask— subsection 212.209(c)—requires an appraisal district to determine "average land value" as follows:

> (c) Once every 10 years,[5] each appraisal district in which the municipality is wholly or partly located shall calculate and provide to the municipality the average land value for each area or portion of an area designated by the municipality under Subsection (a) that is located in the district.

*Id.* § 212.209(c) (footnote added). Where more than one appraisal district is involved, subsection 212.209(d) requires an additional calculation to determine the "total average land value" for each

---

[3]Subchapter H applies only to municipalities with a population greater than 800,000. TEX. LOC. GOV'T CODE § 212.202.

[4]Section 212.211 sets forth requirements when the calculation is performed by certain municipalities in which the parkland dedication fee is "not greater than two percent of the median family income." *Id.* § 212.211(a), (b). If a municipality chooses to both require a landowner to dedicate some portion of a property and to impose a parkland dedication fee, subsection 212.211(c) provides for a calculation that features "the land value applicable to the land" that is "subject to a plan application . . . ." *Id.* § 212.211(c); *see also id.* § 212.205(a)(2). Because this calculation involves the land value of a particular owner's land rather than an entire area's "average land value," subsection 212.209(c) is not implicated by this provision.

[5]Pursuant to House Bill 1526, the initial determination of average land value under subsection 212.209(c) was to be completed by each appraisal district no later than January 1, 2024. Act of May 21, 2023, 88th Leg., R.S., ch. 493, § 2, 2023 Tex. Gen. Laws 1165, 1169. Average land value "[i]n each year other than the year in which an appraisal district calculates average land values under Subsection (c)" is then determined pursuant to subsection 212.209(e). TEX. LOC. GOV'T CODE § 212.209(e) (requiring a municipality to "calculate the average land value for each area designated under Subsection (a) by multiplying the previous year's average land value for the area by one plus the average consumer price index for each month of the previous year").

area within the municipality. *Id.* § 212.209(d). Finally, the municipality must set its "dwelling unit factor" and "density factor." *Id.* § 212.209(f), (g).

Section 212.210 contains the general requirements for calculating a parkland dedication fee where a municipality subject to subchapter H does not qualify under section 212.211. *Id.* §§ 212.210(a), .211(b). The multistep calculation set forth in subsection 212.210(b) is particularly relevant to your request.[6] The first step makes use of the "dwelling unit factor" set pursuant to subsection 212.209(f). *Id.* § 212.210(b)(1). The second step involves the "average land value for the area in which the land is located[.]" *Id.* § 212.210(b)(2). And the third step divides the product obtained in step two by the "density factor" set under subsection 212.209(g). *Id.* § 212.210(b)(3). Given its close relationship to section 212.209, subsection 212.210(b) provides important context when considering your inquiry.

**A court would determine the legislative intent for subsection 212.209(c) by construing its text.**

In the correspondence appended to your request, Representative Harris explained his "original legislative intent" as the author of House Bill 1526. Request Letter at 3. Upon providing this explanation, the representative requested that TCAD perform the calculation required by subsection 212.209(c) "according to the law and [his] legislative intent." *Id.* at 4. While it is true that, in construing a statute, a court's "primary objective is to ascertain and give effect to the Legislature's intent," courts consider "the most reliable guide to the Legislature's intent" to be "the plain meaning of the statutory terms, informed by context[.]" *Morath v. Lampasas Indep. Sch. Dist.*, 686 S.W.3d 725, 734 (Tex. 2024). Indeed, "the statement of a single legislator, even the author and sponsor of the legislation, does not determine legislative intent." *AT & T Commc'ns of Tex., L.P. v. Sw. Bell Tel. Co.*, 186 S.W.3d 517, 528–29 (Tex. 2006). Rather, "[t]he text of the statute is the law and the only definitive evidence of what the legislators had in mind when the statute was enacted into law[.]" *Starks v. State*, 684 S.W.3d 868, 874 (Tex. App.—Eastland 2024, no pet.); *see also Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson*, 209 S.W.3d 644, 651 (Tex. 2006) ("Ordinarily, the truest manifestation of what legislators intended is what lawmakers enacted, the literal text they voted on."). Accordingly, a court would apply traditional principles of statutory construction to determine the meaning and application of subsection 212.209(c).

**An appraisal district calculates the average land value for each municipally designated suburban area, urban area, or central business district area.**

Subsection 212.209(c) refers to "the average land value for *each area or portion of an area* designated by the municipality under Subsection (a) that is located in the district." TEX. LOC. GOV'T CODE § 212.209(c) (emphasis added). The statute delineates between an "area" and a "portion of an area" because subsection 212.209(c) applies to an "appraisal district in which the municipality is wholly or partly located . . . ." *Id.*; *see also id.* § 212.209(d) (setting forth an

---

[6]Similar to section 212.211, subsections 212.210(d) and 212.210(e) determine the fee when the relevant municipality chooses to both require a landowner to dedicate a portion of the landowner's property for parkland use and to impose a parkland dedication fee pursuant to subsection 212.205(a)(2). TEX. LOC. GOV'T CODE § 212.210(d)–(e); *see also id.* § 212.205(a)(2). Accordingly, these provisions within section 212.210 also do not implicate an area's "average land value" as that term is used in subsection 212.209(c).

additional calculation where "multiple appraisal districts calculate an average land value for different portions of an area"). Furthermore, the reference to subsection 212.209(a) indicates that the "area" for which the average land value must be calculated means "a suburban area, urban area, or central business district area." *Id.* § 212.209(a); *see generally Brown v. City of Houston*, 660 S.W.3d 749, 754 (Tex. 2023) (stating that "the surrounding provisions of a disputed text" are "[a]mong the core contextual considerations that generate reliable constructions"). Accordingly, subsection 212.209(c) requires an appraisal district to calculate the average land value for each municipally designated suburban area, urban area, and central business district area located within the district.

> **Calculating "average land value" begins by determining the "market value" for the "land" within a given area.**

An appraisal district's determination of "average land value" pursuant to subsection 212.209(c) must be performed in accordance with the statutory definition of "land value." Subchapter H defines "[l]and value" to mean "the market value of land per acre, not including an improvement to the land." TEX. LOC. GOV'T CODE § 212.201(4). In turn, "[m]arket value" generally "means the price at which a property would transfer for cash or its equivalent under prevailing market conditions" where three listed circumstances are present. TEX. TAX CODE § 1.04(7) (specifying three circumstances with respect to market conditions); *see also* TEX. LOC. GOV'T CODE § 212.201(3) (providing that "market value" for purposes of subchapter H has "the meaning[] assigned by Section 1.04, Tax Code"). Calculating "average land value" thus begins with an appraisal district determining the "market value" of the relevant "land."

While section 212.209 does not expressly address which "land" subsection (c) implicates, subsection 212.210(b)(2) provides guidance. The "land" associated with calculating "average land value" is that which is located within a municipally designated suburban area, urban area, or central business district area. TEX. LOC. GOV'T CODE § 212.210(b)(2) (providing that calculation of a parkland dedication fee includes "multiplying the sum calculated under Subdivision (1) by the average land value for *the area in which the land is located*" (emphasis added)); *see also supra* at 3–4 (construing an "area" to refer to "a suburban area, urban area, or central business district area").

Furthermore, by defining "land value" in reference to the Tax Code's definition of "market value," subchapter H incorporates the requirement for an appraisal district to determine the land value for the area within the district "by the application of generally accepted appraisal methods and techniques."[7] TEX. TAX CODE § 23.01(b) (setting forth how "market value" is to be determined). Tax Code subsection 23.01(h) provides guidance on what constitutes such a method or technique as follows:

---

[7]While application of generally accepted appraisal methods and techniques informs the initial determination of "land value," such methods and techniques provide no assistance in construing the function of the word "average" in the calculation of "average land value." We instead construe "average" based on the statutory text itself.

> (h) Appraisal methods and techniques included in the most recent versions of the following are considered generally accepted appraisal methods and techniques for the purposes of this title:
>
>> (1) the Appraisal of Real Estate published by the Appraisal Institute;
>>
>> (2) the Dictionary of Real Estate Appraisal published by the Appraisal Institute;
>>
>> (3) the Uniform Standards of Professional Appraisal Practice published by The Appraisal Foundation; and
>>
>> (4) a publication that includes information related to mass appraisal.

*Id.* § 23.01(h). As a practical matter, an appraisal district will often already be aware of the market value of individual properties within the relevant whole or partial area, as previously determined through generally accepted methods and techniques, and thus need only delineate which properties are located on that area's land and add together the values of each property. *See id.* § 23.01(a) (providing that "[e]xcept as otherwise provided by this chapter, all taxable property is appraised at its market value as of January 1").

Accordingly, a court would likely conclude that calculating "land value" pursuant to subsection 212.209(c) requires an appraisal district to determine the "market value" for the "land" in each municipally designated suburban area, urban area, and central business district area located within the district.

**"Average land value" refers to the value for all land in a given area as expressed on a "per acre" basis.**

Following a determination of the land value for each area or portion of an area, subsection 212.209(c) then requires this figure to be converted to the "*average* land value." TEX. LOC. GOV'T CODE § 212.209(c) (emphasis added). Without more, the statute's plain text would simply direct appraisal districts to calculate the average value of all land in each full or partial area. But since "[l]and value" is statutorily defined to mean "the market value of land per acre, not including an improvement to the land," *id.* § 212.201(4), we incorporate that definition into the subsection 212.209(c) calculation, which produces the following result:

> (c) Once every 10 years, each appraisal district in which the municipality is wholly or partly located shall calculate and provide to the municipality the average [*market value of land per acre, not including an improvement to the land*] for each area or portion of an area designated by the municipality under Subsection (a) that is located in the district.

*Id.* § 212.209(c) (emphasis added). Before considering the effect on the statute's meaning, we briefly review the competing interpretations received in relation to your request regarding how the calculation is to be performed.

The correspondence from Representative Harris appended to your request asserts that an appraisal district should add together "all assessed value within each of the suburban, urban, [and] CBD areas" and then divide the resulting sum "by the total acreage for each area." Request Letter at 3. By contrast, Representative Harris indicates that TCAD performs the calculation by adding together all "per acre per parcel value[s]" and then dividing by the total number of "parcels." *Id.* (referring to "the average of all parcels' acre value").[8] However, neither TCAD's response to Representative Harris nor its briefing to our office confirms the exact formula it has chosen to employ. *See id.* at 5; Brief from Leana Mann, Chief Appraiser, Travis Cent. Appraisal Dist. at 1–2 (Apr. 5, 2024) (on file with the Op. Comm.). In any event, our office does not determine facts through the opinion process, and thus nothing in this opinion is intended to indicate that TCAD employs any particular method of calculation. *See* Tex. Att'y Gen. Op. No. KP-0281 (2020) at 1. We thus discuss the approach ascribed to TCAD only in the abstract to determine whether it comports with subsection 212.209(c).

We find no textual support for calculating "average land value" by first determining per-acre-per-parcel values, which we understand to mean extrapolating the value of individual parcels upward or downward to that of a fictive acre. While "[l]and value" is defined as "market value of land per acre," the land value that must be calculated pursuant to subsection 212.209(c) is that of "each area or portion of an area . . . ." Tex. Loc. Gov't Code §§ 212.201(4), .209(c). Assigning a per-acre value to individual parcels impermissibly divorces "market value" from this wider statutory context. To be sure, "market value" generally refers to specific valuations of real property conducted by appraisal districts. *See* Tex. Tax Code § 23.01(b) (providing that "each property shall be appraised based upon the individual characteristics that affect the property's market value"). But when read into subsection 212.209(c), "market value" instead suggests that valuation data reflecting *actual* property values should be utilized rather than extrapolated values of fictive acres. Accordingly, the calculation set forth in subsection 212.209(c) does not involve assigning a per-acre value to individual parcels of land.

The "per acre" reference in the definition of "land value" instead performs a different function: It clarifies what is to be averaged when calculating "average land value." *See* Tex. Loc. Gov't Code §§ 212.201(4), .209(c). An "average" is commonly defined as "constituting the result obtained by adding together several quantities and then dividing this total by the number of quantities[.]" New Oxford American Dictionary 111 (3d ed. 2010); *see also Fort Worth Transp. Auth. v. Rodriguez*, 547 S.W.3d 830, 838 (Tex. 2018) (stating that courts "typically look first to dictionary definitions" when determining the "common, ordinary meaning" of words not statutorily defined). As set forth above, the initial sum is the total value of the "land" located in a

---

[8]Briefing received in response to your request further suggests that TCAD "determine[s] the average calculations at the parcel level . . . ." Brief from Citizens for Responsible Parks at 2 (Apr. 2, 2024) (on file with the Op. Comm.). Specifically, the brief alleges that TCAD takes "the appraised value of each individual sub-acre parcel and extrapolat[es] a per acre value for each individual parcel[,]" "takes individual parcels that are greater than one acre and downsizes them to an acre to extrapolate a per-acre value[,]" and "then takes each of these fictional one-acre parcels and averages them together . . . ." *Id.* at 1.

given area or portion of an area. Indeed, the reference to "land" in the singular rather than, for example, a reference to parcels, tracts, or "lands" in the plural, confirms that "per acre" applies to the totality of the relevant area. The resulting total value is then divided by the total number of acres in the same area, resulting in an "average" as expressed in dollars "per acre." Accordingly, neither the text of subsection 212.209(c) nor the embedded reference to "market value of land per acre" provides support for dividing the value of land within a whole or partial area by its number of parcels.

Given that these constructions are foreclosed by the relevant statutory text, we briefly turn back to the construction suggested by Representative Harris. As a threshold matter, we disagree that the calculation of average land value necessarily involves adding together "all assessed value" within a given area, as "assessed value" is distinct from "market value." *Compare* TEX. TAX CODE § 1.04(7) (defining "[m]arket value"), *with id.* § 1.04(9) (containing a different definition for "[a]ssessed value"). Having made that distinction, we agree that the representative's suggested calculation otherwise comports with the text of subsection 212.209(c) under the analysis set forth above. Accordingly, a court would likely conclude that the calculation of "the average land value for each area or portion of an area" is performed by determining the market value of all land in a municipally designated suburban area, urban area, or central business district area located within the relevant appraisal district and then dividing the resulting total land value by the total acreage within the same area of the appraisal district.

**S U M M A R Y**

Local Government Code chapter 212, subchapter H, establishes a statutory framework related to multifamily, hotel, or motel development in certain large municipalities. Under this framework, a municipality may require a portion of a landowner's property to be dedicated for parkland use, impose a parkland dedication fee, or both require the dedication and impose the fee. Within subchapter H, subsection 212.209(c) requires appraisal districts in which a municipality is wholly or partly located to calculate the "average land value for each area or portion of an area." The "land value" refers to the total "market value" of land within each municipally designated suburban area, urban area, or central business district area located wholly or partially within the appraisal district. A court would likely conclude that the "average land value" is obtained by dividing the land value in each partial or whole area within the district by the total acres within the same area.

Very truly yours,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

LESLEY FRENCH
Chief of Staff

D. FORREST BRUMBAUGH
Deputy Attorney General for Legal Counsel

AUSTIN KINGHORN
Chair, Opinion Committee

J. AARON BARNES
Assistant Attorney General, Opinion Committee